Associates Commercial Corporation (hereinafter "ACC") appeals from the trial court's judgment awarding George Roberts $37,590 in storage fees and other costs. We affirm in part, reverse in part, and render a judgment for Roberts.
On May 10, 2001, ACC sued B.R. Armstrong Transport, Inc., Bobby Ray Armstrong (B.R. Armstrong Transport and Bobby Ray Armstrong are hereinafter collectively referred to as "Armstrong"), and Roberts seeking to recover four Freightliner trucks and five trailers as to which it alleged it held a purchase-money security interest. ACC alleged that it held a security interest based upon Armstrong's default on loans it had made to Armstrong that were used to purchase the trucks and trailers. It also alleged that Roberts had possession of the trucks and trailers and that he was attempting to obtain titles to them. On that same day, ACC also filed a motion for a writ of seizure, with an attached supporting affidavit; the trial court set a hearing on the motion for June 5, 2001.
On June 1, 2001, Bobby Ray Armstrong filed in the trial court a notice of bankruptcy stating that his assets were the property of his bankruptcy estate and that the bankruptcy proceeding stayed this action against him. On June 5, 2001, the trial court reset the writ-of-seizure hearing to June 25, 2001. On June 7, 2001, the trial court stayed this action and placed it on its administrative docket. On June 19, 2001, ACC dismissed Bobby Ray Armstrong as a defendant and requested the trial court to transfer the case back to its active docket and to proceed with the writ-of-seizure hearing as scheduled. On June 20, 2001, Roberts filed an answer and counterclaim. Roberts's counterclaim stated that he had title to three of the trucks, that three of the trailers had been stored on his property since September 1, 2000, and that each trailer had accumulated storage fees in the amount of $4,425 (for a total of $13,275 for the three trailers). Roberts asked the trial court (1) to determine whether he had valid ownership of the trucks, (2) to determine the reasonable storage fees for the trucks and trailers that ACC was claiming a security interest in; (3) to issue a judgment for those storage fees, and (4) to confirm his right to *Page 1259 
liens on the trucks and trailers. On June 21, 2001, the trial court granted ACC's request to transfer this case to its active docket and to proceed with the writ-of-seizure hearing.
On June 25, 2001, after conducting a hearing on ACC's motion for a writ of seizure, the trial court entered an order stating that B.R. Armstrong Transport, Inc., and Roberts were to surrender possession of three trucks and three trailers to ACC upon the clerk's approval of a $50,000 detinue bond. The order further stated that Roberts reserved the right to pursue his claim for storage fees at a trial to be scheduled at a later date. On that same day, a notation was made on the case action summary scheduling the trial for August 20, 2001.
A bench trial was conducted on August 22, 2001, at which testimony was taken from Roberts and Jerry Luna, a representative of ACC. The trial court then allowed the parties the opportunity to file memorandum briefs. On September 4, 2001, both parties filed memorandum briefs, and ACC also filed an amended brief. In his brief, Roberts argued, in part, that he and Mike Hyatt, an ACC employee, had agreed that ACC would pick up the trucks and trailers and would pay storage fees, and that he was entitled to recovery of the storage fees on the theory of quantum meruit. ACC's brief and amended brief argued that there was no specific agreement that ACC would pay Roberts's storage fees, that the bankruptcy code provided the means in which Roberts could request payment of his storage fees as an administrative expense, and that Roberts had offered no proof that his fees were reasonable in support of his quantum meruit theory. On September 5, 2001, the trial court, without setting forth specific findings of fact, entered a judgment for Roberts in the amount of $37,590. On October 17, 2001, ACC filed a notice of appeal to this court.
On appeal, ACC argues that the trial court erred in entering a judgment for Roberts because: (1) Roberts had no lien on the trucks and trailers upon which ACC would be liable for storage charges; (2) ACC had no contract with Roberts; (3) Roberts was not entitled to recovery under the theory of quantum meruit; (4) Roberts had failed to prove the reasonableness of his storage charges; and (5) the amount of the judgment was not supported by the evidence.
Because the trial court conducted a bench trial in this case, the ore tenus standard of review applies.
 "When ore tenus evidence is presented, a presumption of correctness exists as to the trial court's findings on issues of fact; its judgment based on these findings of fact will not be disturbed unless it is clearly erroneous, without supporting evidence, manifestly unjust, or against the great weight of the evidence. J M Bail Bonding Co. v. Hayes, 748 So.2d 198 (Ala. 1999); Gaston v. Ames, 514 So.2d 877
(Ala. 1987). When the trial court in a nonjury case enters a judgment without making specific findings of fact, the appellate court `will assume that the trial judge made those findings necessary to support the judgment.' Transamerica Commercial Fin. Corp. v. AmSouth Bank, 608 So.2d 375, 378 (Ala. 1992). Moreover, `[u]nder the ore tenus rule, the trial court's judgment and all implicit findings necessary to support it carry a presumption of correctness.' Transamerica, 608 So.2d at 378. However, when the trial court improperly applies the law to facts, no presumption of correctness exists as to the trial court's judgment. Allstate Ins. Co. v. Skelton, 675 So.2d 377 (Ala. 1996); Marvin's, Inc. v. Robertson, 608 So.2d 391 *Page 1260 
(Ala. 1992); Gaston, 514 So.2d at 878; Smith v. Style Advertising, Inc., 470 So.2d 1194 (Ala. 1985); League v. McDonald, 355 So.2d 695 (Ala. 1978). `Questions of law are not subject to the ore tenus standard of review.' Reed v. Board of Trustees for Alabama State Univ., 778 So.2d 791, 793 n. 2 (Ala. 2000). A trial court's conclusions on legal issues carry no presumption of correctness on appeal. Ex parte Cash, 624 So.2d 576, 577 (Ala. 1993). This court reviews the application of law to facts de novo. Allstate, 675 So.2d at 379 ('[W]here the facts before the trial court are essentially undisputed and the controversy involves questions of law for the court to consider, the [trial] court's judgment carries no presumption of correctness.')."
City of Prattville v. Post, [Ms. 2000461, April 5, 2002] 831 So.2d 622,627-28 (Ala.Civ.App. 2002).
 I. Whether Roberts Had a Lien
ACC first argues that Roberts did not have a lien arising out of his storage of the trucks and trailers and cites supporting caselaw. SeeFaulk v. Green Tree Acceptance, Inc., 549 So.2d 80, 81 (Ala. 1989) ("Towing and storage charges result in neither a common law possessory lien nor a statutory lien.") (citing Alabama Farm Bureau Mut. Cas. Co. v.Lyle Serv. Ambulance-Wrecker, 395 So.2d 90 (Ala.Civ.App. 1981)). Roberts replies by stating that this issue was determined by the trial court's order on ACC's motion for a writ of seizure, which awarded possession of the trucks and trailers to ACC. Our review of the record confirms that this issue was disposed of before the trial conducted on Roberts's counterclaims; therefore, it could not have been a determinative consideration in the trial court's award to Roberts.
 II. Whether a Contract Existed
ACC argues that there was no contract between it and Roberts. The trial court was presented with conflicting testimony regarding whether an agreement existed between Roberts and ACC as to ACC's payment of an agreed-upon storage fee and its taking possession of the trucks and trailers. At trial, Roberts testified that he first came into possession of the trucks and trailers in August 2000 and that he had spoken to Mike Hyatt, an employee of ACC, on December 7, 2000, and that they had agreed that ACC would pay Roberts a storage fee, shown through an exhibit that was admitted into evidence to be $2,250 for three trucks, and that ACC would pick up the trucks by December 11, 2000. Roberts further testified that ACC did not pick up the trucks and trailers until after the trial court issued its order on ACC's motion for a writ of seizure on June 25, 2001. ACC asserts that it could not pick up the trucks and trailers until the stay in Bobby Ray Armstrong's bankruptcy proceeding had been lifted, that by that time, Roberts had the titles to the three trucks placed into his name, and that the trucks and trailers were picked up on June 27, 2000, two days after the trial court had ordered Roberts to surrender them to ACC. In regard to the alleged agreement, Mike Luna, a representative of ACC testified that Hyatt was an employee of ACC and that he recalled that Hyatt had had a conversation with Roberts in December 2000, but that he had no knowledge that ACC had agreed to pay the storage fees.
In Alabama Farm Bureau Mutual Casualty Co. v. Lyle ServiceAmbulance-Wrecker, 395 So.2d 90 (Ala.Civ.App. 1981), this court, after holding that a lien could not be acquired for towing or storage charges, stated, in pertinent part: *Page 1261 
 "There was evidence that Farm Bureau agreed to pay the towing and ambulance charges relating to the two vehicles previously released. They totaled a sum of $150. The contention of Farm Bureau that its promise to pay such charges is void under § 8-9-2(3) Code of Alabama (1975) as an oral promise to pay the debt of another is not acceptable. Farm Bureau made its own promise to pay in return for a valuable consideration — the release to it by Lyle of the particular vehicle involved. It received that consideration and the statute does not apply. Locke v. Kay, 257 Ala. 376, 59 So.2d 70 (1952); Waters v. Blackmon, 228 Ala. 462, 153 So. 739 (1934)."
395 So.2d at 93.[1] We must presume that the trial court made findings necessary to support its judgment, City of Prattville, supra, and with the conflicting evidence presented, it could have reasonably found that a contract existed between Roberts and ACC upon which ACC was obligated to pay the storage fees.
 III. Quantum Meruit
ACC argues that Roberts would not be entitled to his storage fees under the theory of quantum meruit. In Phillips v. Fuller, 814 So.2d 885
(Ala.Civ.App. 2001), this court stated:
 "Both of these theories for equitable relief [work and labor done and quantum meruit] are methods of avoiding unjust enrichment, and both require the existence of a contract, either express or implied. See United States ex rel. Eastern Gulf, Inc. v. Metzger Towing, Inc., 910 F.2d 775 (11th Cir. 1990); and G.S. Gothard Son Contractors, Inc. v. Mansel, 611 So.2d 1101
(Ala.Civ.App. 1992).
 "`There are two kinds of implied contracts — those implied in fact and those implied in law. Contracts implied in law are more properly described as quasi or constructive contracts where the law fictitiously supplies the promise [to pay for the labor or services of another] to prevent a manifest injustice or unjust enrichment.'
 "Green v. Hospital Bldg. Auth. of the City of Bessemer, 294 Ala. 467, 470, 318 So.2d 701, 704
(1975). `The rule is that if one knowingly accepts services rendered by another, and the benefit and result thereof, the law implies a promise on the part of the one who so accepts with knowledge, to pay the reasonable value of such services rendered.' Richards v. Williams, 231 Ala. 450, 453, 165 So. 820, 823
(1936). In order to succeed on a claim of unjust enrichment, the plaintiff must show that he had a reasonable expectation of compensation for his services. Utah Foam Prods., Inc. v. Polytec, Inc., 584 So.2d 1345, 1350 (Ala. 1991)."
814 So.2d at 888.
The evidence presented at trial was that on December 7, 2000, ACC became aware that Roberts was storing the trucks and trailers. Roberts also submitted into evidence an invoice for $2,250 for his storage of the three trucks, which, he testified, ACC had agreed to pay. There was *Page 1262 
sufficient evidence from which the trial court could have determined that Roberts expected to be compensated for his storage services, Utah FoamProds. Inc. v. Polytec, Inc., 584 So.2d 1345 (Ala. 1991), and was entitled to the reasonable value of those services, Richards v.Williams, 231 Ala. 450, 165 So. 820 (1936). However, the alleged agreed-upon amount of $2,250 for Roberts's storage of the three trucks until December 7, 2000, precludes any award on a theory of quantum meruit for storage fees for the trucks before that date.
 IV. Reasonableness of Storage Fees
ACC argues that Roberts failed to prove that his storage fees were reasonable. At trial, Roberts testified that his storage fees were $25 per day for each truck and $15 per day for each trailer.[2] ACC filed an objection before Roberts testified concerning his rates, arguing that those rates had to be shown to be reasonable. The trial court overruled ACC's objection. Our review of the record shows that Roberts failed to present any evidence to support the reasonableness of his fees; he only stated what those fees were. Accordingly, there was no evidence before the trial court from which it could determine that Roberts's storage fees were reasonable and from which it could award storage fees on a quantum meruit basis. See Utah Foam Prods., supra, at 1351 ("because there was no evidence as to the reasonable value of [the] services, the jury verdict . . . is unsupported and cannot stand"); Loggins v. Robinson,738 So.2d 1268, 1271 (Ala.Civ.App. 1999) ("We also note that although Loggins testified to the amount he billed Robinson, he did not testify that his charges represented the reasonable value of his services and that he did not present any evidence regarding the reasonable value of his services. An essential element of a claim for work and labor done is proof of the reasonable value of the services.") (citing FitznerPontiac-Buick-Cadillac, Inc. v. Perkins Assocs., Inc., 578 So.2d 1061
(Ala. 1991)). Thus, we must reverse the trial court's award of storage fees except to the extent there was evidence to support a finding that on December 7, 2000, ACC agreed to pay $2,250 for Roberts's storage of three trucks.
 V. Amount of Judgment
ACC argues that the amount of the trial court's judgment is not supported by the evidence. At trial, Roberts presented an exhibit that itemized and totaled the amounts he sought to be compensated by ACC. That exhibit listed those amounts as follows:
 "3 Trailers @ $15 for 358 days $16,110.00 "3 Tractors @ $20 for 358 days 21,480.00
 "Sub-total $37,590.00 "Towing expense 175.00 "Publication expense 97.00 "Expenses ____70.00
"TOTAL $37,932.00"
As we have already determined, the only amount for storage that the trial court could have properly awarded was $2,250, which it could have determined ACC had agreed to pay on December 7, 2000. Roberts testified that he no longer sought to be compensated for the listed towing expense because the company that had performed the towing had been paid by another source. ACC does not challenge the remaining publication expense and undesignated expenses. Accordingly, Roberts is entitled to a judgment for the total of the amounts of $2,250, $97, and $70, which is $2,417, and we render a judgment for Roberts in that amount. *Page 1263 
AFFIRMED IN PART; REVERSED IN PART; AND JUDGMENT RENDERED.
Yates, P.J., and Thompson and Pittman, JJ., concur.
[1] ACC similarly argues in brief that the alleged contract between Roberts and it would be in violation of the statute of frauds. However, our review of the record shows that that issue was not raised to the trial court below, either as an affirmative defense or in ACC's briefs to the trial court following the bench trial. "Our review is limited to the issues that were before the trial court — an issue raised on appeal must have first been presented to and ruled on by the trial court."Norman v. Bozeman, 605 So.2d 1210, 1214 (Ala. 1992) (citing Bechtel v.Crown Central Petroleum Corp., 451 So.2d 793 (Ala. 1984)).
[2] However, Roberts asked the trial court to award him only a $20 daily storage fee for each of the three trucks.