BRYAN, Judge.
B & B Wrecker Service, Inc. (“B & B”), appeals from a summary judgment in favor of the City of Citronelle (“the city”). We reverse and remand.

Undisputed Facts

The following facts are undisputed. On December 19, 2008, officers of the city’s police department (“the police department”) obtained a search warrant authorizing them to search a mobile home (“the mobile home”) located in Citronelle for evidence relating to the manufacture of methamphetamine. Pursuant to the search warrant, the officers seized, among other things, a 2000 Dodge Ram 3500 pickup truck (“the Dodge Ram”). The police department then called B & B and asked B & B to come to the mobile home. Officer Bill Newburn of the police department then directed B & B to tow the Dodge Ram and three other automobiles to B & B’s storage facility. Four or five days after towing the Dodge Ram and the three other automobiles to its storage facility, B & B asked Officer Newburn whether the city wanted to move the Dodge Ram and the three other automobiles to a facility owned by the city for storage because the fees for storing the Dodge Ram and the three other automobiles at B & B’s facility would total $100 per day. Officer New-burn told B & B that he would check with the mayor and the police chief. Officer Newburn later told B & B that the city wanted to leave the Dodge Ram and the three other automobiles'at B & B’s facility.
On February 27, 2009, the State of Alabama instituted an action in the Mobile Circuit Court, seeking the forfeiture of the *745 Dodge Ram and other items seized at the premises where the mobile home was located. The owner of the Dodge Ram (“the owner”) contested the forfeiture of the Dodge Ram. At the conclusion of the bench trial of that action on December 1, 2009, the Mobile Circuit Court orally announced that it was going to rule in favor of the owner. On February 3, 2010, the Mobile Circuit Court entered a written judgment in favor of the owner. The judgment ordered the State to return the Dodge Ram to the owner.
On January 22, 2010, the owner sued B <& B in the Mobile District Court. The owner alleged that the police department had released its hold on the Dodge Ram pursuant to the judgment of the Mobile Circuit Court in the forfeiture action but that B & B had refused to release the Dodge Ram to the owner. The owner sought a judgment awarding him possession of the Dodge Ram. B & B counterclaimed, seeking to recover its fees for storing the Dodge Ram at its facility. Following a bench trial, the Mobile District Court, on August 4, 2010, entered a judgment (1) finding that, if B & B was owed fees for storing the Dodge Ram at its facility, the fees were not owed by the owner and (2) finding in favor of the owner with respect to his claim seeking possession of the Dodge Ram.
B & B appealed from the judgment of the Mobile District Court to the Mobile Circuit Court. On December 22, 2010, the Mobile Circuit Court entered a judgment (1) finding that the owner was not responsible for B & B’s fees for storing the Dodge Ram at its facility and (2) finding in favor of the owner with respect to his claim seeking possession of the Dodge Ram.

Procedural History

On November 8, 2010, B & B sued the city in the Mobile Circuit Court. In pertinent part, B & B’s complaint alleged:
“3. That [the police department] impounded [the Dodge Ram] pursuant to a lawful drug arrest and placed it for storage and safe keeping with [B & B] pending the outcome of the criminal proceedings and civil forfeiture proceedings initiated by [the State] through the Mobile County District Attorney’s Office.
“4. That on or about December 1, 2009, the [Mobile Circuit Court] ordered the [Dodge Ram] to be released to the rightful owner.
“5. [The city] has refused to pay the storage fees even though lawful demand was made for the same.
“6. [B & B] has incurred substantial storage fees as a result of the impoundment.”
Answering, the city denied that it was obligated to pay B & B’s fees for storing the Dodge Ram at its facility.
On March 11, 2011, the city moved for a summary judgment. The city asserted that, although it had asked B & B to tow and store the Dodge Ram, it was not liable for B & B’s storage fees because, it said, (1) § 11-47-5, Ala.Code 1975,[1] requires contracts with municipalities to be in writing and B & B did not have a written contract with the city relating to the tow *746 ing or storage of the Dodge Ram and (2) § 20-2-93(e)(2), Ala.Code 1975,[2] does not authorize the payment of storage fees on seized property when the seized property is not forfeited.
In opposition to the summary-judgment motion, B & B asserted (1) that § 20-2-93(e)(2) was not applicable to B & B’s claim because the Dodge Ram had not been forfeited and (2) that B & B was entitled to recover its fees for storing the Dodge Ram by virtue of the doctrines of implied contract and quantum meruit. Following a hearing, the trial court, on April 18, 2011, entered a judgment granting the summary-judgment motion on the ground that the city was not obligated to pay B & B’s storage fees under § 20-2-93 because the Dodge Ram had not been forfeited. Thereafter, B & B timely appealed to this court.

Standard of Review

“We review a summary judgment de novo. American Liberty Ins. Co. v. AmSouth Bank, 825 So.2d 786 (Ala.2002).
“ ‘We apply the same standard of review the trial court used in determining whether the evidence presented to the trial court created a genuine issue of material fact. Once a party moving for a summary judgment establishes that no genuine issue of material fact exists, the burden shifts to the non-movant to present substantial evidence creating a genuine issue of material fact. “Substantial evidence” is “evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved.” In reviewing a summary judgment, we view the evidence in the light most favorable to the nonmovant and entertain such reasonable inferences as the jury would have been free to draw.’
“Nationwide Prop. & Cas. Ins. Co.[ v. DPF Architects, P.C.], 792 So.2d [369] at 372 [ (Ala.2000) ] (citations omitted), quoted in American Liberty Ins. Co., 825 So.2d at 790.”
Potter v. First Real Estate Co., 844 So.2d 540, 545 (Ala.2002).

Analysis

B & B first argues that the trial court erred in granting the summary-judgment motion because, it says, the final sentence of § 11^7-5 implies that a city may orally contract for “purchases for the ordinary needs of the municipality” and B & B presented substantial evidence indicating that the city had orally contracted for B & B to store the Dodge Ram at B & B’s facility. However, the record before us does not indicate that B & B presented that argument to the trial court; therefore, we cannot consider it. See Ex parte Ryals, 773 So.2d 1011, 1013 (Ala.2000) (“[T]he appellate court can consider an argument against the validity of a summary judgment only to the extent that the record on appeal contains material from the trial court record presenting that argument to the trial court before or at the time of submission of the motion for summary judgment. Andrews v. Merritt Oil Co., 612 So.2d 409 (Ala.1992).” (emphasis omitted)).
*747 B & B also argues (1) that § 20-2-93(e)(2) does not apply in the case now before us because the Dodge Ram was not forfeited and (2) that B & B is entitled to recover its storage fees from the city pursuant to the doctrines of implied contract and quantum meruit. In response, the city argues that B & B did not specifically plead a claim of implied contract or quantum meruit. However, Rule 8(a)(1), Ala. R. Civ. P., states that “[a] pleading which sets forth a claim for relief ... shall contain (1) a short and plain statement of the claim showing that the pleader is entitled to relief.” B & B’s complaint alleged that “[the police department had] impounded [the Dodge Ram] pursuant to a lawful drug arrest and placed it for storage and safe keeping with [B & B] pending the outcome of the criminal proceedings and civil forfeiture proceedings,” that “[the Mobile Circuit Court had] ordered the [Dodge Ram] to be released to the rightful owner,” that “[B & B] ha[d] incurred substantial storage fees as a result of the impoundment,” and that “[the city] ha[d] refused to pay the storage fees even though lawful demand was made for the same.” Under Rule 8(a)(1), those allegations were sufficient to state a claim of implied contract or quantum meruit. Accordingly, we will consider the merits of B & B’s argument (1) that § 20-2-93(e)(2) does not apply in the case now before us because the Dodge Ram was not forfeited and (2) that B & B is entitled to recover its storage fees from the city pursuant to the doctrines of implied contract and quantum meruit.
“The fundamental rule of statutory construction is to ascertain and give effect to the intent of the legislature in enacting the statute. Words used in a statute must be given their natural, plain, ordinary, and commonly understood meaning, and where plain language is used a court is bound to interpret that language to mean exactly what it says. If the language of the statute is unambiguous, then there is no room for judicial construction and the clearly expressed intent of the legislature must be given effect.”
IMED Corp. v. Systems Eng’g Assocs. Corp., 602 So.2d 344, 346 (Ala.1992). Section 20-2-93(e)(2) is not ambiguous. It clearly states that “[w]hen property is forfeited ... the ... municipal law enforcement agency may ... [s]ell [property] which is not required to be destroyed by law and which is not harmful to the public” and that “[t]he proceeds from the sale ... shall be used, first, for payment of all proper expenses of the proceedings for forfeiture and sale, including expenses of seizure, maintenance of or custody, advertising and court costs.... ” It does not purport to provide what should occur if seized property is not forfeited. Accordingly, we conclude that the plain language of § 20-2-93(e)(2) indicates that it does not govern the case now before us because the Dodge Ram was not forfeited.
In Bethune v. City of Mountain Brook, 293 Ala. 89, 93, 300 So.2d 350, 352 (1974), the supreme court stated that, despite the requirement of Title 37, § 467, Ala.Code 1940 (Recomp.1958), a statutory predecessor of § 11^17-5, that a contract with a municipality relating to matter other than purchases for the ordinary needs of the municipality be in writing,
“provided a contract is within the scope of its corporate powers, a municipal corporation may be held liable on an implied contract, either where the contract is implied in fact from corporate acts, or is implied in law, to prevent the municipality from enriching itself by accepting and retaining benefits without paying just compensation therefor.”
In Green v. Hospital Building Authority of Bessemer, 294 Ala. 467, 470, *748 318 So.2d 701, 704 (1975), the supreme court explained:
“There are two kinds of implied contracts — those implied in fact and those implied in law. Contracts implied in law are more properly described as quasi or constructive contracts where the law fictitiously supplies the promise to prevent a manifest injustice or unjust enrichment.”
In the case of quasi or constructive contracts,
“ ‘ “ ‘[t]he rule is that if one knowingly accepts services rendered by another, and the benefit and result thereof, the law implies a promise on the part of the one who so accepts with knowledge, to pay the reasonable value of such services rendered.’ Richards v. Williams, 231 Ala. 450, 453, 165 So. 820, 823 (1936). In order to succeed on a claim of unjust enrichment, the plaintiff must show that he had a reasonable expectation of compensation for his services. Utah Foam Prods., Inc. v. Polytec, Inc., 584 So.2d 1345, 1350 (Ala.1991).” ’
“Associates Commercial Corp. v. Roberts, 844 So.2d 1256, 1261 (Ala.Civ.App.2002) (quoting Phillips v. Fuller, 814 So.2d 885, 888 (Ala.Civ.App.2001)).”
CIT Group/Equip. Fin., Inc. v. Roberts, 885 So.2d 185, 189-90 (Ala.Civ.App.2003).
In the case now before us, the trial court had before it substantial evidence indicating that the police department called B & B to the mobile home; that the police department directed B & B to tow the Dodge Ram and three other automobiles to B & B’s storage facility and to store the Dodge Ram and the three other automobiles there; that, four or five days later, B & B asked Officer Newburn whether the city wanted to move the Dodge Ram to a facility owned by the city for storage because the fees for storing the Dodge Ram and the three other automobiles would total $100 per day; and that Officer Newburn later told B & B that the city wanted to leave the Dodge Ram and the three other automobiles at B & B’s facility. Although the city did not expressly promise to pay B & B for storing the Dodge Ram at its facility, the city knowingly accepted the benefit of B & B’s storing the Dodge Ram at B & B’s facility and knew that B & B was charging a fee for that service. Moreover, the evidence establishing that B & B told Officer New-burn that the storage fees for the Dodge Ram and the three other automobiles would total $100 per day and that Officer Newburn later told B & B that the city wanted to leave the Dodge Ram and the three other automobiles at B & B’s facility constitutes substantial evidence indicating that B & B had a reasonable expectation that it would be paid for storing the Dodge Ram at its facility. Accordingly, we conclude that the evidence before the trial court established a prima facie case of a quasi or constructive contract pursuant to which the law would imply a promise by the city to pay B & B. for storing the Dodge Ram. Accordingly, we reverse the summary judgment in favor of the city and remand the cause to the trial court for further proceedings consistent with this opinion.
REVERSED AND REMANDED.
THOMPSON, P.J., and PITTMAN, THOMAS, and MOORE, JJ., concur.

. Section 11-47-5 provides:
"Contracts entered into by a municipality shall be in writing, signed and executed in the name of the city or town by the officers authorized to make the same and by the party contracting. In cases not otherwise directed by law or ordinance, such contracts shall be entered into and executed by the mayor in the name of the city or town and all obligations for the payment of money by the municipality, except for bonds and interest coupons, shall be attested by the clerk. This section shall not be construed to cover purchases for the ordinary needs of the municipality.”

. In pertinent part, § 20-2-93(e)(2) provides:
"(e) When property is forfeited under this chapter the state, county, or municipal law enforcement agency may:
"(2) Sell that which is not required to be destroyed by law and which is not harmful to the public. The proceeds from the sale authorized by this subsection shall be used, first, for payment of all proper expenses of the proceedings for forfeiture and sale, including expenses of seizure, maintenance of or custody, advertising and court costs....”