Transamerica Commercial Finance Corporation ("Transamerica") appeals from a judgment in favor of AmSouth Bank, N.A. ("AmSouth") on AmSouth's claims of conversion. AmSouth alleged that Transamerica wrongfully repossessed certain items of retail inventory in which AmSouth had a first-priority security interest.
Transamerica and Tel-Data Systems, Inc. ("Tel-Data"), a retail seller of computers and related equipment, entered into a "floor-plan" financing agreement. This agreement gave Transamerica a security interest in all of Tel-Data's furniture, equipment, inventory, accounts receivable, and other assets. In return, Transamerica financed Tel-Data's purchases of inventory from its suppliers.
Performance of the inter-related agreements between Transamerica, Tel-Data, and Tel-Data's suppliers began with Tel-Data's order for merchandise from one of the suppliers. The supplier would contact Transamerica and have the order "approved." Approval of the order obligated Transamerica to pay the supplier for the goods that Tel-Data ordered and received. At this time Transamerica assigned an approval number to the order. The supplier shipped the goods to Tel-Data and sent invoices to Transamerica and Tel-Data.
After Tel-Data received the merchandise and notified Transamerica, Transamerica began its process for paying the supplier for the merchandise. Once Transamerica received and approved the invoice sent by the supplier, it created a trust receipt evidencing Transamerica's indebtedness to the suppliers. Transamerica then processed a check for payment. When Tel-Data later sold the merchandise, it paid Transamerica the amount of the invoice, plus interest charges. To determine whether merchandise financed by Transamerica had been sold or not, Transamerica would periodically conduct a floor-plan check of Tel-Data's inventory.
One of the owners of Tel-Data decided to sell his interest in that company. The other owners decided to purchase the selling owner's interest and contacted AmSouth to arrange for a loan. AmSouth agreed to lend the money for the purchase, but required a first-priority security interest in all of Tel-Data's inventory. Transamerica agreed to subordinate to AmSouth its prior security interest in all Tel-Data property specified in the agreement, except "inventory or goods financed by Transamerica." Thus, under the agreement, AmSouth held a first-priority security interest in all inventory not
financed by Transamerica. Transamerica and AmSouth agreed further that *Page 377 
upon default the secured party having priority under the terms of the subordination agreement would have an immediate right to possession of the collateral as between the parties. Transamerica and AmSouth executed a written subordination agreement, and AmSouth lent the money necessary for the purchase of the selling owner's interest. AmSouth also agreed to advance funds to Tel-Data as necessary.
During November 1989, Transamerica checked Tel-Data's inventory and determined that Tel-Data had sold $115,000 worth of inventory financed by Transamerica. Tel-Data wrote a check for the amount of financed inventory it had sold, but when Transamerica presented the check for payment AmSouth refused to honor the check or advance the funds necessary to cover it. Tel-Data informed Transamerica that it should come and repossess its inventory.
Transamerica employees went to Tel-Data's place of business and, with the help of Tel-Data's owners, repossessed the majority of Tel-Data's inventory. AmSouth was later notified of the repossession. At Tel-Data's invitation, AmSouth sent its agents to repossess the inventory and equipment that Transamerica had not recovered.
Transamerica reviewed the inventory that it had repossessed and discovered that it did not have the first-priority security interest in certain parts of that inventory. Transamerica stored that inventory in a warehouse and informed AmSouth. According to AmSouth, Transamerica's action breached the agreement between AmSouth and Transamerica. Transamerica also sent AmSouth written notice that the inventory it had repossessed would be sold "at public or private sale." AmSouth argues on appeal that the notice was deficient and that, even if the notice was proper, Transamerica failed to sell the inventory at public or private sale. Instead, Transamerica returned large portions of the inventory to the suppliers. Transamerica received large credits for the value of the returned inventory. The suppliers applied these credits to the Tel-Data account and also to the accounts of other retail dealers that Transamerica financed.
The major part of AmSouth's conversion claim against Transamerica relates to the returned inventory. AmSouth claimed approximately $163,000 in damages for Transamerica's conversion of this inventory. Transamerica counterclaimed, alleging that AmSouth had repossessed Tel-Data's furniture, in which Transamerica said it held a first-priority security interest. Transamerica contended that this furniture was worth about $17,000 and that it was entitled to a set-off for this amount.
The judge, without a jury, heard ore tenus evidence and received a large quantity of documentary evidence. To prove that AmSouth, and not Transamerica, had a priority security interest in the returned inventory, AmSouth introduced testimony comparing Transamerica's invoices and trust receipts to the lists of inventory returned to Tel-Data's suppliers. At trial, AmSouth sought to show that it had priority in all returned inventory that Transamerica did not pay for and for which it had no invoice or trust receipt. AmSouth's theory at trial and its argument on appeal is that Transamerica "financed" only that inventory for which Transamerica received an invoice from the suppliers. To prove loss suffered as a result of Transamerica's conversion of the inventory, AmSouth calculated the value of all the repossessed inventory transferred to the suppliers for which Transamerica had no invoice or trust receipt. Together with other evidence of other property wrongfully held by Transamerica, AmSouth established approximately $163,000 in loss.
Transamerica's evidence was submitted primarily to support its argument that it had "financed" the returned inventory and thus had a right to possession upon Tel-Data's default under the subordination agreement. At trial, Transamerica presented testimony generally describing its financing arrangement with Tel-Data and its approval of the orders for the merchandise. Transamerica's theory at trial and its argument on appeal is that it "financed" the purchase of the inventory when it gave *Page 378 
approval and thus became obligated to make payment. On appeal, Transamerica argues that once it gave approval to the suppliers, it gave "value" and its security interest attached to the merchandise.
To recover damages on a claim of conversion, a plaintiff must prove that there has been a "wrongful taking or a wrongful detention or interference, or an illegal assumption of ownership, or an illegal use or misuse of another's property."Ex parte SouthTrust Bank of Alabama, N.A.,523 So.2d 407, 408 (Ala. 1988). "The gist of the action is the wrongful exercise of dominion over property in exclusion or defiance of a plaintiff's rights, where the plaintiff has a general or special title to the property or the immediate right to possession." SouthTrust Bank, 523 So.2d at 408.
Ala. Code 1975, § 7-9-503, provides generally that "[u]nless otherwise agreed a secured party has on default the right to take possession of the collateral." The August 30, 1988, subordination agreement between Transamerica and AmSouth stipulated that if either party to the agreement exercised its right to repossession upon default, the party whose security interest had priority under the agreement would have the right to immediate possession as between the parties. Under this agreement, Transamerica subordinated its security interest in all of Tel-Data's assets, except inventory "financed" by Transamerica. Because AmSouth's conversion claim relates principally to inventory repossessed by Transamerica and returned to Tel-Data's suppliers, the main issue in the case is whether Transamerica "financed" this repossessed inventory. If the inventory was indeed "financed," then Transamerica had a right to immediate possession of the inventory upon Tel-Data's default and cannot be liable to AmSouth for conversion. If the inventory was not "financed," then AmSouth had a right to possession and Transamerica converted the inventory when it repossessed and returned the merchandise to the suppliers.
Because the trial judge made no specific findings of fact, this Court will assume that the trial judge made those findings necessary to support the judgment. FitznerPontiac-Buick-Cadillac, Inc. v. Perkins Assocs., Inc.,578 So.2d 1061 (Ala. 1991). Under the ore tenus rule, the trial court's judgment and all implicit findings necessary to support it carry a presumption of correctness and will not be reversed unless "found to be plainly and palpably wrong."Fitzner, 578 So.2d at 1063. "The trial court's judgment in such a case will be affirmed, if, under any reasonable aspect of the testimony, there is credible evidence to support the judgment." Clark v. Albertville NursingHome, Inc., 545 So.2d 9, 13 (Ala. 1989); see, also,Norman v. Schwartz, 594 So.2d 45 (Ala. 1991).
Although Transamerica's evidence does suggest that it "financed" inventory when it approved the suppliers' shipments of merchandise to Tel-Data, Transamerica did not analyze the large quantity of documentary evidence and show specifically that it had "financed" the disputed inventory. Transamerica presented no trust receipts or invoices corresponding to the inventory in question. While Transamerica employees testified generally that Transamerica had given approval to the return of the inventory later returned to the suppliers, Transamerica did not introduce the approval numbers assigned to the repossessed inventory to establish its obligation to pay.
On this appeal, Transamerica attempts to argue that when it gave approval to the orders, it gave "value" for purposes of attachment and thus "financed" Tel-Data's purchases of the inventory. A recent decision of this Court and a decision rendered by the Eleventh Circuit Court of Appeals support the proposition that a creditor's binding executory promise to extend credit constitutes "value" for purposes of attachment.Southern Ready Mix, Inc. v. AmSouth Bank, N.A.,576 So.2d 188, 190 (Ala. 1991); First Maryland Leasecorp. v.M/V Golden Egret, 764 F.2d 749 (11th Cir. 1985). Transamerica, however, has failed to show that the trial court's judgment could not have been reached except by a mistake of law or misapplication of the law to the *Page 379 
facts that the trial court could have properly found from the evidence.
Transamerica also argues that the trial court failed to give it credit for the furniture, allegedly worth $17,000. AmSouth concedes that Transamerica is entitled to a set-off for the furniture, but submits that the trial court's judgment of $152,623.53 includes the set-off. In support of this contention, AmSouth points to the substantial difference between the amount claimed and the amount of the judgment.
Transamerica has failed to demonstrate that the trial court's findings are plainly and palpably wrong or that the implicit findings necessary to support the judgment are inconsistent with any rule of law. Because Transamerica did not show approval numbers for the disputed items of inventory or otherwise present enough evidence of its obligation to pay for the inventory in question, this Court cannot hold that the trial court was plainly and palpably wrong in its implicit finding that Transamerica did not "finance" the challenged inventory. Transamerica has failed to rebut the strong presumption of correctness arising under the ore tenus
rule. Therefore, the judgment is affirmed.
AFFIRMED.
HORNSBY, C.J., and SHORES, ADAMS, STEAGALL and INGRAM, JJ., concur.