This case arose out of the denial by the City of Prattville Planning Commission ("the Commission") of "preliminary plan approval" for a residential subdivision to be known as Kingston Hills.
Pursuant to § 11-52-1 et seq., Ala. Code 1975, the City of Prattville ("the City") adopted an ordinance setting forth regulations relating to the development of residential subdivisions within the City's jurisdiction.[1] Under the City's regulations, planned subdivisions must go through a three-step approval process before the Commission. The three steps are: a sketch-plan approval, a preliminary plan approval, and final plat acceptance, which are described in more detail below.
Initially, a developer presents a "sketch plan" to the Commission. The sketch plan typically includes general information about the developer's plans for the subdivision. The City department heads review the sketch plan and offer comments, after which the developer appears before the Commission to discuss the sketch plan. The purpose of sketch-plan review is to give the developer an opportunity to confer with the Commission and its technical advisors before drawing detailed plans of the subdivision for preliminary plan approval. The Commission's approval of a sketch plan is based on general information rather than an in-depth review; thus, under the City's regulations, sketch-plan approval is expressly not binding on the Commission in subsequent stages of plan review.[2]
In the second stage, the developer presents a preliminary plan to the Commission. The preliminary plan is considered to be the formal application for subdivision approval and is to include specific information about the subdivision. Under the City's regulations, the developer is not authorized to perform any grading work or other improvements to the property before preliminary plan approval; it does so at its own risk.[3] During this stage, the developer *Page 625 
must appear before the Commission to discuss the preliminary plan, and the Commission will conduct a public hearing on the subdivision before granting or denying approval.
Finally, in the third stage, the developer presents a final plat to the Commission for approval. Under Article III, Section D, of the Ordinance, final plat approval is required before the subdivision can be recorded in the county probate office and before the construction of the planned residential structures can begin.
In this case, Mack Post and Bobby Carter ("the developers") submitted a sketch plan for a proposed subdivision, to be called "Kingston Hills," to the Commission in 1994. The sketch plan proposed to divide the land into 110 lots, provided for a pumping station to connect the homes to be built on those lots to the City's sewer system, and projected the installation of curbs and gutters for storm drainage. The Commission approved the sketch plan, but the developers did not proceed with the development of the subdivision at that time. The developers determined that the cost of the pumping station and the use of curbs and gutters made the project too expensive for them to pursue.
On March 4, 1998, the developers submitted a second sketch plan for Kingston Hills to the Commission. The developers revised their 1994 plans and divided the land into 30 large lots with septic tanks and open ditches for storm drainage. After the City department heads had reviewed the sketch plan, the City advised the developers, in a letter dated March 16, 1998, that the planning department had made the following comments on the sketch plans, in pertinent part: "Indicate the nearest sewer main. City regulations require the connection of subdivisions that are within 1200 ft. of an existing main."
The developers' engineer, Greg Gillian,[4] appeared before the Commission at its March 19, 1998, Commission meeting, to discuss the sketch plan. One of the developers, Mack Post, was also present at the meeting. Gillian requested three times that the sketch plan not be approved unless it was approved with open ditches and septic tanks. Joel Duke, the city planner, advised the Commission not to approve the subdivision as proposed with septic tanks because the subdivision was located within 1200 feet of a sewer connection. The Commission unanimously approved the sketch plan; however, Gillian admitted that the city planner advised him at the meeting that sketch-plan approval was not binding toward preliminary plan approval.
It is undisputed that, at the time of sketch-plan approval, one of the developers, Bobby Carter, and Gillian, acting as the developers' agent, knew that under the City's regulations, sketch- plan approval was not binding on the Commission at the preliminary plan stage of review. The other developer, Mack Post, testified that he relied on Gillian, as his agent, to review the City's regulations. After the meeting, Gillian advised both developers that sketch-plan approval was not binding toward preliminary plan approval. The developers proceeded with the engineering work necessary to prepare the subdivision for preliminary plan approval, incurring $20,262.25 in engineering fees.
On August 4, 1998, the Autauga County Health Department inspected the property and issued a letter to "proceed with caution" with the use of septic tanks because of the soil types.
The developers submitted the subdivision for preliminary plan approval at the *Page 626 
August 20, 1998, Commission meeting. Gillian and at least one of the developers appeared before the Commission to discuss the preliminary plan.[5] After much discussion of the August 4 letter dealing with soil types, erosion issues relating to the design of the open ditches, and concerns that future development might be cut off from the City's sewer system if Kingston Hills were to be developed with septic tanks, the Commission voted not to approve the preliminary plan with septic tanks and open ditches.
The developers resubmitted Kingston Hills for preliminary plan approval at the December 1998 Commission meeting. Gillian and one of the developers, Mack Post, appeared before the Commission to discuss the preliminary plan. The developers and the Commission felt that they would be able to alleviate the Commission's concerns about the open ditches; however, the issue of the septic tanks created an impasse. The Commission again voted not to approve the preliminary plan with septic tanks.
The developers then sued the City and the Commission. The developers asserted a fraud claim and also alleged that the Commission had acted negligently, recklessly, or wantonly in having represented to the developers at the sketch-plan stage that the Commission specifically approved of the use of septic tanks and then disapproving the use of septic tanks at the preliminary plan stage.[6] Alleging substantive immunity, the City filed a motion to dismiss all of the developers' claims. The City also moved, on other grounds, to dismiss the wantonness and recklessness claims. The trial court denied the City's motion to dismiss based on substantive immunity, but granted the City's motion to dismiss the wantonness and recklessness claims. The developers amended their complaint to name as additional defendants those individual Commission members who had voted against preliminary plan approval, alleging that the Commission had acted in bad faith.
On December 18, 2000, a bench trial was held. At the close of the developers' case, the City and the individual Commission defendants moved for the entry of a judgment in their favor, contending that the individual Commission members were entitled to immunity; that the developers had failed to demonstrate an intent to deceive, which the defendants contended was essential to the developers' fraud claim based on a promissory-fraud theory; and that the developers' negligent-misrepresentation theory also failed in that the developers could not have reasonably relied on the Commission's mere sketch-plan approval. The trial court granted the defendants' motion in part and denied it in part, and entered a judgment in favor of the City to the extent the developers sought relief on a promissory-fraud theory; the court also accorded immunity to the individual Commission members. However, the trial court denied the City's motion as to "monetary damages," which we infer to be a reference to the possibility of relief *Page 627 
based on negligent misrepresentation.[7] At the conclusion of a bench trial, the trial court entered a judgment in favor of the developers as to negligent misrepresentation in the amount of $20,262.25, i.e., the amount of the engineering fees incurred by the developers after the sketch-plan approval stage. The City appeals.
The City seeks the reversal of the trial court's judgment on three grounds. It contends that substantive immunity should have applied to the City, that the remaining fraud claim was actually a claim of promissory fraud and that claim was adjudicated in its favor when the trial court granted the City's motion for a judgment; and that substantial evidence did not support the trial court's judgment in favor of the developers as to the negligent- misrepresentation claim.
The developers argue that substantive immunity should not apply and that the developers reasonably relied on representations by the City approving septic tanks and open ditches during the sketch-plan review.
 Standard of Review
At the close of the developers' case, the City and the individual Commission defendants moved for what they called a "judgment as a matter of law". At the close of the City's case, the City renewed the motion.
A motion for a "judgment as a matter of law" asserted in a bench trial is actually a motion for a judgment on partial findings by the trial court. Hinson v. Holt, 776 So.2d 804 (Ala.Civ.App. 1998), cert. quashed,776 So.2d 814 (Ala. 2000); Loggins v. Robinson, 738 So.2d 1268, 1270
(Ala.Civ.App. 1999); Rule 50(c), Ala.R.Civ.P. In Loggins, 738 So.2d at 1271, this court stated:
 "[P]recedents addressing the effect of involuntary dismissals under former Rule 41(b) should be equally applicable to judgments entered on partial findings pursuant to Rule 52(c), Ala.R.Civ.P. See Grant v. Bullock County Bd. of Educ., 895 F. Supp. 1506, 1508-09 (M.D.Ala. 1995) (applying involuntary-dismissal precedents in ruling upon a motion for a judgment on partial findings filed pursuant to Fed.R.Civ.P. 52(c)).
 "While former Rule 41(b) was in effect, our Supreme Court held that the ore tenus standard of review applied to judgments entered pursuant to that rule:
 "`[S]ince the Judge is the trier of fact in a nonjury action, he or she may weigh and consider the evidence on a motion for an involuntary dismissal. The normal presumptions of correctness attach to a trial court's ruling on an involuntary dismissal. The trial court's ruling need only be supported by credible evidence and will not be set aside unless it is clearly erroneous or palpably wrong or unjust.'
 "Feaster v. American Liberty Ins. Co., 410 So.2d 399, 402 (Ala. 1982)."
When ore tenus evidence is presented, a presumption of correctness exists as to the trial court's findings on issues of fact; its judgment based on these findings of fact will not be disturbed unless it is clearly erroneous, without supporting evidence, manifestly unjust, or against the great weight of the evidence. J M Bail Bonding Co. v.Hayes, 748 So.2d 198 (Ala. 1999); Gaston v. Ames, 514 So.2d 877 (Ala. 1987). When the trial court in a nonjury *Page 628 
case enters a judgment without making specific findings of fact, the appellate court "will assume that the trial judge made those findings necessary to support the judgment." Transamerica Commercial Fin. Corp.v. AmSouth Bank, 608 So.2d 375, 378 (Ala. 1992). Moreover, "[u]nder theore tenus rule, the trial court's judgment and all implicit findings necessary to support its carry a presumption of correctness."Transamerica, 608 So.2d at 378. However, when the trial court improperly applies the law to facts, no presumption of correctness exists as to the trial court's judgment. Allstate Ins. Co. v. Skelton, 675 So.2d 377
(Ala. 1996); Marvin's, Inc. v. Robertson, 608 So.2d 391 (Ala. 1992);Gaston, 514 So.2d at 878; Smith v. Style Advertising, Inc., 470 So.2d 1194
(Ala. 1985); League v. McDonald, 355 So.2d 695 (Ala. 1978). "Questions of law are not subject to the ore tenus standard of review." Reed v. Boardof Trustees for Alabama State Univ., 778 So.2d 791, 793 n. 2 (Ala. 2000). A trial court's conclusions on legal issues carry no presumption of correctness on appeal. Ex parte Cash, 624 So.2d 576, 577 (Ala. 1993). This court reviews the application of law to facts de novo. Allstate, 675 So.2d at 379 ("[W]here the facts before the trial court are essentially undisputed and the controversy involves questions of law for the court to consider, the [trial] court's judgment carries no presumption of correctness.").
In this case, we conclude that the question whether the developers should recover based on a negligent-misrepresentation theory turns on essentially undisputed facts; at the time of sketch-plan approval, the City and the developers — as well as Gillian — knew that the City had a right under its ordinance to approve the sketch plan and later to not approve the preliminary plan. Because we are applying law to essentially undisputed facts, no presumption of correctness exists as to the trial court's judgment, and our review is de novo.
The Developers' Negligent-Misrepresentation Theory[8]
The elements of a misrepresentation claim are (a) a false representation of an existing material fact; (b) a representation (1) that the speaker knew was false when made, (2) that was made recklessly and without regard to its truth or falsity, or (3) that was made by telling the listener that the speaker had knowledge that the representation was true while having no such knowledge; (c) reliance by the listener on the representation, coupled with deception by it; (d) the reasonableness of that reliance under the circumstances; and (e) damage to the listener proximately resulting from his or her reasonable reliance. Cato v. Lowder Realty Co., 630 So.2d 378, 381-82 (Ala. 1993);Foremost Ins. Co. v. Parham, 693 So.2d 409 (Ala. 1997) (readopting the "reasonable reliance" standard). Reasonable reliance is shown "[i]f the circumstances are such that a reasonably prudent person who exercised ordinary care would have discovered the true facts." Torres v. State FarmFire Cas. Co., 438 So.2d 757, 759 (Ala. 1983).
This court concludes that the undisputed facts do not support the developers' claim of negligent misrepresentation. We first note that the Commission did not make a false statement of an existing material fact. The Commission gave its formal approval to a sketch plan that showed *Page 629 
that the development would use septic tanks and open ditches. There is no evidence indicating that the Commission, at the time it gave approval to the sketch plan, did not actually approve of the use of septic tanks and open ditches. Rather, the evidence demonstrates that, after giving sketch-plan approval, the Commission changed its mind regarding the advisability of such tanks and ditches.
The Commission argues that the developers' negligent- misrepresentation claim is, in reality, a promissory-fraud claim. To prevail on a claim for promissory fraud, the developers, in addition to satisfying the elements of misrepresentation stated above, must satisfy two additional elements: (1) "proof that at the time of the misrepresentation, the defendant had the intention not to perform the act promised," and (2) "proof that the defendant had an intent to deceive." Padgett v. Hughes, 535 So.2d 140,142 (Ala. 1988). Consequently, a claim of promissory fraud based on an implied representation that the preliminary plan would be approved could not be sustained in this case. There was no evidence that the Commission, at the time it gave approval for the sketch plan, intended not to approve the preliminary plan. Further, under the particular facts of this case, and given the legal authority of the Commission to approve or disapprove preliminary plans, reliance by the developers on an implied representation, allegedly arising from the Commission's approval of the sketch plan, that the Commission would subsequently approve the developers' preliminary plan, would not have been reasonable. SeeForemost Ins. Co. v. Parham, supra.
Even if the developers' misrepresentation claim could be considered a claim that the Commission, by approving the sketch plan, effectively represented that it would not subsequently deny preliminary plan approvalmerely because the plan included septic tanks and open ditches, it could not be sustained. Again, there is no evidence that the Commission, at the time it gave sketch-plan approval, intended subsequently to deny approval of the developers' preliminary plan merely on the basis of its utilization of septic tanks and open ditches. Without such proof of intent, the developers' misrepresentation claim could not be viable. SeePadgett, supra.
 Conclusion
The City's remaining arguments are pretermitted by our conclusion that the developers are not entitled to recover on a theory of negligent misrepresentation. The judgment of the trial court is reversed, and the cause is remanded for the entry of a judgment in favor of the City on all claims.
REVERSED AND REMANDED WITH INSTRUCTIONS.
Yates, P.J., and Crawley, Thompson, and Pittman, JJ., concur.
[1] Article I, Section A, of the City's ordinance governing subdivisions contains the following findings:
"The planning commission finds that:
"(1) Land subdivision is the first step in
the process of community development.
 "(2) Once land has been subdivided, the correction of defects is costly and difficult.
 "(3) Subdivision of land is a public concern because roads, streets, drainage, sewer, water, and other public services must be provided and maintained.
 "(4) These and other factors relating to subdivision affect the entire community in many important aspects.
 "(5) New development should not become a burden for existing or future residents of the community; therefore, sound subdivision rules and proper standards must be drawn to protect existing and future residents of the community and to assure proper services to all citizens."
[2] Article III, Section B, of the Ordinance, which relates to sketch-plan review, provides that "[a]cceptance of a sketch plan is based upon general information rather than in-depth review; therefore, acceptance of a sketch plan is not binding toward preliminary plan acceptance."
[3] Article III, Section C, of the Ordinance, which relates to preliminary plan acceptance, provides that "[w]ork prior to acceptance not authorized: Any grading or other improvements done prior to preliminary plan acceptance shall be at the risk of the subdivider. The planning commission shall not consider the cost of such unauthorized work as justification for variances of the subdivision regulations."
[4] Greg Gillian was an engineer with Larry Speaks and Associates, an engineering firm.
[5] Mack Post attended the August 20, 1998, Commission meeting. Bobby Carter testified that he could not remember for certain whether he attended the August 20, 1998, Commission meeting, but that he was certain he attended one of the Commission meetings where Kingston Hills was discussed and he knew for certain that he did not attend the Commission meeting where the sketch plan was discussed.
[6] The developers also included an equal-protection and due- process claim and a claim that the Commission's decision was arbitrary and capricious. The trial court entered a judgment in favor of the City on those claims.
[7] Section 11-47-190, Ala. Code 1975, limits monetary damages against a municipality to those claims alleging negligence.
[8] The claim at issue alleges misrepresentation, not negligence on the part of the Commission in approving the developers' sketch plan.