MOORE, Judge.
 

 George Horton and Louise Horton appeal from a judgment entered by the Lauderdale Circuit Court (“the trial court”) on August 4, 2008, denying them any recovery for improvements they made to property owned by Venita K. Perkins. We affirm.
 

 Procedural and Factual Background
 

 On October 6, 2006, Perkins filed a complaint against the Hortons, seeking to eject them from land she had acquired by warranty deed on June 15, 2006, and to recov
 
 *236
 
 er damages for waste or other injury to the land caused by the Hortons. On November 9, 2006, the Hortons filed an answer and a counterclaim. In their counterclaim, the Hortons sought damages from Perkins for fraud and unjust enrichment. The Hortons claimed that they had been induced to make improvements to Perkins’s property for which they were entitled to compensation. On May 30, 2008, after a failed mediation, the Hortons amended their counterclaim in an attempt to add Charity Perkins as a party; however, the Hortons never served Charity Perkins, and the trial court ultimately dismissed the action against her. The case proceeded to an ore tenus hearing on June 24, 2008.
 

 The evidence adduced at the hearing showed that, before August 1993, the Hor-tons had resided in a manufactured home located on a lot they had rented in a mobile-home park in Sheffield. Unhappy with the condition of the park and an impending rent increase, Louise, with the assistance of her sister, Charity Perkins, started looking for alternative places to live. According to the Hortons’ testimony, after Charity and Louise found no suitable property, Charity offered to give the Hor-tons a deed to a one-acre portion of a four-acre plot of land she had recently inherited from her and Louise’s uncle so the Hor-tons could locate their manufactured home on that property. Charity testified that she had never promised to deed the Hor-tons the land but merely had agreed that they could move their manufactured home onto her property and occupy the land so long as they lived. Clara Thompson, a third sister, testified that she had heard Charity offer to allow the Hortons to park their manufactured home on her property rent-free for as long as they wanted but that she had never heard Charity offer to convey to the Hortons a gift of one acre of the land.
 

 The Hortons moved their manufactured home onto the property in August 1993, parking it next to a mobile home owned by Charity in which her then teenaged daughter, Venita, was living. Charity did not execute a deed to the Hortons in 1993, however. The Hortons testified that Charity had told them she could not deed them the pi'operty until the uncle’s will had been probated. The will was probated by April 1994, but Charity still did not execute a deed to the Hortons. Louise testified that over the next several years she often discussed the matter with Charity but that Charity kept making excuses as to why she could not execute the deed. It is undisputed that the Hortons never paid any rent for their use of the property.
 

 Although they never received a deed to the plot of land on which their manufactured home was located, the Hortons spent considerable sums improving that home and the property. Among other things, the Hortons added a den and a deck to the structure, installed a septic tank, ran electrical, water, and sewage lines to the manufactured home, added vinyl soffit and siding, and bricked the exterior walls of the home. In addition, the Hortons paid for improvements to Charity’s house located immediately next door to their home. The Hortons also paid to replace a dirt and gravel driveway with a concrete driveway that Charity shared. Charity testified that she had never anticipated that the Hortons would make those improvements, that she had advised them not to make those improvements, and that she had allowed those improvements to be made simply to avoid any arguments with the Hortons.
 

 In 2001 or 2002, Charity conveyed the four-acre tract of property to her brother,
 
 *237
 
 Jeffrey Perkins.
 
 [1]
 
 Jeffrey testified that during his ownership of the property no one had ever mentioned to him that the Hortons were entitled to a deed to one acre of the property. Jeffrey testified that it had been his understanding that Charity had told the Hortons they could live on the property as long as they lived. Jeffrey stated that he also had agreed that they could remain on the property.
 

 In June 2006, Jeffrey sold the four-acre tract to Venita. At the time of the sale, Venita knew that the Hortons lived on the property. Charity informed Venita that she wanted to make sure the Hortons had a place to live their whole lives. Venita testified that she then met with the Hor-tons and told them that they could stay on the property as long as they wanted but that she wanted the manufactured home moved off the property upon their deaths. Venita testified that the Hortons had originally agreed to that arrangement. Louise testified that Venita had then presented a “lifetime lease” to the Hortons that contained terms to which the Hortons could not consent and that they had therefore refused to sign the agreement. Venita then sued to have the Hortons ejected from the property. The Hortons moved out of the manufactured home and off the property in October 2007.
 

 The Hortons called Melissa Calloway, a real-estate appraiser, as an expert witness at the trial. Calloway testified that, based on a sales-comparison analysis she had performed, in her opinion the manufactured home had a fair market value of $69,000; however, she could not identify any purchaser who would pay that price for the home. Venita testified that the presence of the manufactured home actually decreases the value of the property and that the property would be worth more if the home was removed. Venita explained that the home is situated too close to the other homes on the property and that it causes traffic problems on the property at times. Venita testified that when she bought the property she had wanted the manufactured home removed but that she had agreed to let the Hortons stay there at her mother’s request. Jeffrey testified that because of poor workmanship, a sagging and leaking roof, and structural problems, the manufactured home would cost more to maintain than could be recovered in rent. Jeffrey opined that the manufactured home did not enhance the value of the property and that he would tear it down if he owned the property. Jeffrey also stated that he believed the property was worth more without the manufactured home and that the reasonable rental value of the property on which the manufactured home rested was $100 to $150 per month.
 

 On August 4, 2008, the trial court entered the following judgment:
 

 “The Court held a hearing at which the parties were present with their attorneys. After a trial and upon consideration of the evidence, ... the Court finds that the plaintiffs/counter-defendants are entitled to judgment with respect to the counterclaim of the defendants/counter-plaintiffs.[
 
 2
 
 ] Pursuant to the decision in
 
 Griffin v. Griffin,
 
 206 Ala. 489, 90 So. 907 [ (1921) ], the defendants/counter-plaintiffs should be al
 
 *238
 
 lowed the value of the improvements they made to the property; however, that decision states that the fair value for rental of the land should be deducted from the same. The Court finds that the fair rental value of the land offsets any value of the improvements. The plaintiffs original claim against the defendants is MOOT as they have voluntarily removed themselves from the property in dispute. This concludes the case.”
 

 On September 2, 2008, the Hortons filed a motion to alter, amend, or vacate the judgment or, in the alternative, for a new trial.
 
 See
 
 Rule 59, Ala. R. Civ. P. In that motion, the Hortons claimed that the trial court had erred in denying them any equitable relief and that they should receive damages or an equitable hen against the property in the amount of $46,350. The trial court denied the Rule 59 motion on September 5, 2008. The Hortons filed a notice of appeal to the Alabama Supreme Court on September 15, 2008; that court subsequently transferred the appeal to this court, pursuant to Ala.Code 1975, § 12-2-7.
 

 Discussion
 

 In
 
 Griffin v. Griffin,
 
 206 Ala. 489, 90 So. 907 (1921), J.M.E. Griffin took possession of a parcel of land as a parol gift from his father, Jerry Griffin. 206 Ala. at 489-90, 90 So. at 907. Thereafter, based on his understanding that he owned the property, J.M.E. erected a house and made other major and minor improvements for which he paid.
 
 Id.
 
 After the death of J.M.E., his widow and child became embroiled in a controversy with Jerry over the ownership of the property, resulting in a lawsuit.
 
 Id.
 
 The trial court ultimately determined that Jerry held title to the land, but it fixed a hen on the property for the present value of the improvements less the reasonable rental value of the property during the time that it was occupied.
 
 Id.
 
 On appeal, the supreme court affirmed the trial court’s judgment, concluding that, although a court of equity could not order specific performance of the parol gift, it was authorized to award the donee, or his representatives, compensation for the improvements less the reasonable rental value of the property as a condition precedent to the recovery of the property. 206 Ala. at 490, 90 So. at 908.
 

 Although recognizing significant factual differences between this case and
 
 Griffin,
 
 the Hortons do not quarrel with the trial court’s application of the holding in
 
 Griffin
 
 to this case. They apparently agree that they are not entitled to specific performance of the alleged parol gift made by Charity. They also apparently agree that the measure of any equitable relief to which they would be entitled is measured by the difference between the value at the time of the trial of the improvements that had been made to the property and the reasonable rental value of the property. They argue only that the trial court erred in determining that the reasonable rental value of the property completely offset the present value of the manufactured home.
 
 [3]
 

 We initially note that the trial court did not make any specific findings of fact
 
 *239
 
 regarding either the present value of the manufactured home or the reasonable rental value of the property at issue. “ ‘When the trial court in a nonjury case enters a judgment without making specific findings of fact, the appellate court “will assume that the trial judge made those findings necessary to support the judgment.” ’ ”
 
 Farmers Ins. Co. v. Price-Williams Assocs., Inc.,
 
 873 So.2d 252, 254 (Ala.Civ.App.2003) (quoting
 
 City of Prattville v. Post,
 
 831 So.2d 622, 627-28 (Ala.Civ.App.2002), quoting in turn
 
 Transamerica Commercial Fin. Corp. v. AmSouth Bank,
 
 608 So.2d 375, 378 (Ala.1992)). Accordingly, we will assume that the trial court found that the reasonable rental value of the property during the period the Hortons occupied the land from August 1993 to October 2007 was greater than the present value of the manufactured home as it existed at the time of trial. Although the Hortons frame the issue somewhat differently, the question for our review is whether the evidence is sufficient to sustain that factual finding.
 

 “ ‘ “When ore tenus evidence is presented, a presumption of correctness exists as to the trial court’s findings on issues of fact; its judgment based on these findings of fact will not be disturbed unless it is clearly erroneous, without supporting evidence, manifestly unjust, or against the great weight of the evidence.
 
 J & M Bail Bonding Co. v. Hayes,
 
 748 So.2d 198 (Ala.1999);
 
 Gaston v. Ames,
 
 514 So.2d 877 (Ala.1987).... Moreover, ‘[ujnder the
 
 ore tenus
 
 rule, ... all implicit findings necessary to support [the trial court’s judgment] carry a presumption of correctness.’
 
 Transamerica [Commercial Fin. Corp. v. AmSouth Bank],
 
 608 So.2d [375] at 378 [ (Ala.1992) ].”
 

 Kellis v. Estate of Schnatz,
 
 983 So.2d 408, 412 (Ala.Civ.App.2007) (quoting
 
 Farmers Ins. Co. v. Price-Williams
 
 Assocs.,
 
 Inc.,
 
 873 So.2d at 254, quoting in turn
 
 City of Prattville v. Post,
 
 831 So.2d at 628).
 

 In regard to the reasonable rental value of the property, the evidence consists solely of the testimony of Jeffrey that the property had a rental value ranging between $100 and $150 a month. Based on that testimony, the reasonable rental value for the 171 months that the Hortons occupied the property would be between $17,100 and $25,650.
 

 As to the value of the manufactured home at the time of the trial, the evidence consisted of the expert opinion of Calloway that the home has a fair market value of $69,000 and the opinion testimony of Veni-ta and Jeffrey that the home actually detracts from the value of the property and that it basically has no value.
 

 In their brief to this court, the Hortons quote the following excerpt from
 
 Commonwealth Life Insurance Co. v. Harmon,
 
 228 Ala. 377, 153 So. 755 (1934):
 

 “The general rules stated by the decisions of this court as to the effect of expert testimony are: ‘The judgments of experts or the inferences of skilled witnesses, even when unanimous and un-controverted ... are not necessarily conclusive on the jury ..., but may be disregarded by it or by the court trying an issue of fact ...,
 
 unless the subject is one for experts or skilled witnesses alone,
 
 and the jury cannot properly be assumed to have, or be able to form, correct opinions of their own, under which circumstances the unanimous evidence of properly qualified witnesses has been regarded by some courts as conclusive ....’”
 

 228 Ala. at 380, 153 So. at 757 (quoting 22 Corpus Juris § 823) (emphasis added). The Hortons then argue that Alabama appellate courts have not decided whether real-estate appraisal is a “subject ... for
 
 *240
 
 experts or skilled witnesses alone.” Hor-tons’ brief, p. 18. The Hortons apparently contend that this court should conclude that only experts may give opinion testimony as to real-estate value and that Cal-loway’s testimony should therefore be considered conclusive.
 

 Actually, Alabama law has long recognized an exception to the general rule excluding opinion testimony of lay witnesses by holding that a lay person is competent to testify as to his or her opinion of the value of real property if he or she has had an opportunity to form an opinion and testifies in substance that he or she has done so.
 
 State v. Coheley,
 
 539 So.2d 257, 258 (Ala.1989). Pursuant to that exception, it is not necessary that a witness be qualified as an expert in order to establish the fair market value of real property.
 
 Sanford v. Sanford,
 
 355 So.2d 365, 369 (Ala.1978). Rule 701 of the Alabama Rules of Evidence provides:
 

 “If the witness is not testifying as an expert, the witness’s testimony in the form of opinions or inferences is limited to those opinions or inferences which are (a) rationally based on the perception of the witness and (b) helpful to a clear understanding of the witness’s testimony or the determination of a fact in issue.”
 

 The Advisory Committee’s Notes to Rule 701 specifically contemplate that “most, if not all, of [the common-law] exceptions [to the general rule excluding lay opinions] will be recognized under Rule 701.” Thus, if a lay witness has had an opportunity to observe the condition of real property and to form an opinion based on those observations as to its value, Rule 701, consistent with Alabama common law, permits the witness to testify as to that opinion when that testimony is helpful to resolving a litigated issue regarding that property value.
 

 Based on the foregoing authority, we reject any contention that the trial court was bound by Calloway’s testimony. Rather, the trial court was free to consider the testimony of both Venita and Jeffrey on the question of the value of the manufactured home. Venita owned the property at issue, observed the home on a regular basis, and had ample opportunity to form an opinion as to its value. Jeffrey owned the property for several years and, based on his description of the defects in the home, obviously had familiarized himself with its condition so as to form an opinion as to its value and the effect of its presence on the value of the property. In fact, the Hortons do not argue that the opinion testimony of Jeffrey or Venita was inadmissible due to lack of a proper predicate.
 

 In ore tenus proceedings, the trial court has the advantage of seeing and hearing the witnesses and assessing their demean- or and is in the best position to decide among conflicting testimony which testimony is to be believed.
 
 Woods v. Woods,
 
 653 So.2d 312, 314 (Ala.Civ.App.1994). In this case, the trial court apparently rejected Calloway’s opinion and instead credited the testimony of Venita and Jeffrey that the manufactured home did not improve the value of the property but actually detracted from it. Based on that resolution of the evidentiary dispute, the trial court could have reasonably concluded that the reasonable rental value of the property, as established by Jeffrey’s testimony, more than offset the present value of the manufactured home.
 

 Our deferential standard of review compels us to affirm the trial court’s judgment based on that conclusion because it is not “ ‘ “clearly erroneous, without supporting evidence, manifestly unjust, or against the great weight of the evidence.” ’ ”
 
 Kellis,
 
 983 So.2d at 412. Although we may not
 
 *241
 
 have reached the same conclusion as the trial court, we cannot reweigh the evidence and substitute our judgment for that of the trial court.
 
 Ex parte R.E.C.,
 
 899 So.2d 272, 279 (Ala.2004).
 

 Venita’s request for the award of attorney fees on appeal is denied.
 

 AFFIRMED.
 

 THOMPSON, P.J., and PITTMAN, BRYAN, and THOMAS, JJ., concur.
 

 [1]
 

 . Some testimony indicates that, in 2003, Jeffrey executed a deed conveying the property to himself and Charity jointly.
 

 [2]
 

 . Although the trial court did not explicitly rule on the fraud count of the counterclaim, the language of the final judgment indicates that the trial court implicitly denied that claim. Thus, the judgment conclusively decides all the controversies between the parties and is a final judgment that will support an appeal.
 
 See Faith Props., LLC v. First Commercial Bank,
 
 988 So.2d 485, 490 (Ala.2008).
 

 [3]
 

 . Although the Hortons presented evidence of improvements made to the driveway and to Charity’s home, they do not argue on appeal that the present value of those improvements should be included in calculating their equitable relief. Therefore, we consider that argument to have been waived, and we will not discuss those improvements further.
 
 See Stewart v. Bradley,
 
 15 So.3d 533, 545 (Ala.Civ.App.2008) (quoting
 
 Brown v. Wal-Mart Stores, Inc.,
 
 864 So.2d 1100, 1104 (Ala.Civ.App.2002)) (" 'We will not reverse a trial court's judgment based on arguments not presented to the trial court or based on arguments not made to this court.’ ”).