THOMPSON, Presiding Judge.
This appeal arises from postdivorce proceedings in the Jefferson Circuit Court. Chivers Richard Woodruff, Jr. (“the husband”), appeals from the order of the trial court as to the parties’ respective petitions for a rule nisi; Julia Mariani Woodruff (“the wife”) cross-appeals. On January 14, 2008, the trial court held an ore tenus hearing on the parties’ respective petitions and amended petitions. After the hearing, the court entered an order requiring the husband to pay the wife $27,539.55 “for her share of the net proceeds from the sale of the [parties’] house, the [husband] being solely responsible for the indebtedness on the house” pursuant to the terms of the original divorce judgment. The trial court *1151 also ordered the wife to pay the husband $10,000 for property that the husband was to have received pursuant to the original divorce judgment.
The evidence adduced at the hearing of this matter tended to show the following. The parties were divorced on April 10, 2006. Before the divorce judgment was entered, the parties had drafted an agreement (“the agreement”) indicating, among other things, the manner in which their assets, including both real property and personal property, were to be divided. Many of the provisions of the agreement included in the record had handwritten notations beside them, and portions of some of the provisions were deleted. In entering the final judgment of divorce, the trial court noted that the judgment was “based on the pleadings, the oral testimony of the [husband] and [wife] and the [agreement] filed.” The trial court included the provisions of the agreement in the final judgment, but the language of the agreement was not always included verbatim. Neither party appealed from the final judgment of divorce.
On September 15, 2006, the husband filed a petition for a rule nisi alleging that the wife had failed to comply with a number of the provisions of the divorce judgment. On November 17, 2006, the wife filed a counter-petition for a rule nisi claiming, among other things, that the husband had not cooperated with her in the sale of a rental house the parties owned.
One of the terms in the original divorce judgment provided as follows:
“4. The parties jointly own real estate located [on] Willoughby Road, Birmingham, Alabama. The realty shall be placed on the market and sold, with the net proceeds divided with Fifty Percent (50%) to the [wife] and Fifty Percent (50%) to the [husband]. Pending such sale, the [husband] shall be responsible for and pay the mortgage payments, taxes, and insurance due on said realty, and shall indemnify and hold harmless the [wife] therefrom.”
When the parties purchased the Wil-loughby Road house, they took title as joint owners with the right of survivorship. Both signed the mortgage on the house, but only the husband signed the promissory note. During the marriage, the parties rented the Willoughby Road house, and the rental profits were used for the benefit of the marriage.
The Willoughby Road house was placed on the market pursuant to the divorce judgment. The husband continued to make the mortgage payments on the house. In late 2006, while the petitions in the underlying proceedings were pending before the trial court, the wife and a potential buyer had discussions about the house. An informal offer was made for the purchase of the house. The wife told the husband about the offer, and he replied by e-mail that the offer sounded reasonable. As the wife was negotiating with the potential buyer, she also indicated to the husband that she was interested in purchasing the husband’s share of the equity in the Willoughby Road house. The husband said he would consider any written offer, but he did not hear back from the wife.
The husband asked the wife about the status of the sale of the Willoughby Road house, including whether a closing date had been set, but he heard nothing further from the wife. On December 4, 2006, the wife entered into a contract for the sale of the house for $265,000. She represented to the purchaser that she was the sole owner of the house, and at the January 17, 2007, closing on the house, she alone signed the warranty deed conveying the house to the purchaser. After the mortgage and closing costs were paid, the wife *1152 received $101,135.19. She had also previously received $1,500 in earnest money from the purchaser. The husband said that he had no knowledge of the sale, that he was not present at the closing, and that he did not receive any portion of the net proceeds of the sale.
On October 24, 2007, ten months after the sale of the Willoughby Road house, the husband amended his petition, seeking what he claimed was his portion of the net proceeds from the sale. On December 24, 2007, the wife amended her counter-petition, claiming for the first time that the husband had failed to satisfy the mortgage on the Willoughby Road house and that she had suffered an economic loss as a result.
As to the items of personal property and money the husband claimed he had not received, the husband testified that he had not received all of the coins in a coin collection that he had been awarded in the original divorce judgment. He also testified that the wife had not given him other items that were specifically awarded to him, including bottles of wine, photographic equipment, tools, and dishes and serving pieces that had belonged to his parents. The wife testified that she did not have several of the items the husband claimed. For example, she said that she had delivered all of the coins that were in the collection and that there was no inventory of the coins to show that any were missing. She also testified that she was under no obligation to “deliver” items to the husband and that she had allowed him access to the house to retrieve them, but, she stated, he had been “too tired” or “too upset” to look for some of them and had never returned to the house to retrieve the property at issue.
There was also evidence indicating that the wife had fraudulently endorsed two checks to withdraw money from an investment account that had been awarded to the husband and that she had charged personal purchases to accounts awarded to the husband after the divorce.
On appeal, the husband contends that the trial court improperly construed the term “net proceeds” as the parties had contemplated that term in the agreement and as it was used in the divorce judgment regarding the sale of the Willoughby Road house. Specifically, the husband asserts that the trial court improperly determined that the divorce judgment required the husband to pay off the mortgage in its entirety, from the husband’s own assets, before the parties equally divided the proceeds from the sale of the Willoughby Road house.
Conversely, at the hearing on the petitions and on appeal, the wife contends that because she did not join the husband in signing the promissory note for the debt on the house on Willoughby Road, he was solely responsible for paying that debt. Because the husband did not pay off the mortgage in its entirety before the sale of the house, the wife claimed she suffered an economic loss because the proceeds from the sale of the Willoughby Road house were reduced by the amount required to pay off the mortgage.
As previously noted, the Willoughby Road house sold for $265,000. After the mortgage indebtedness and closing costs were paid, the wife received $101,135.19 at the closing plus $1,500 in earnest money that she had received earlier. We note that, in the wife’s brief to this court, she refers to the $101,135.19 she received at the closing as the “net proceeds.” The wife calculated that, after closing costs were paid, the “net sales price” of the Willoughby Road house, which she defined as the gross sales price minus closing costs only, was $260,349.49. The wife claimed *1153 that, pursuant to the divorce judgment, she was entitled to half that amount, $130,174.74. Because she only received a total of $102,635.19, which included the purchaser’s earnest money, at closing, the wife claimed that the husband still owed her an additional $27,539.55 to make up that difference. The trial court ordered the husband to pay the difference.
As to the house on Willoughby Road, the divorce judgment stated:
“4. The parties jointly own real estate located [on] Willoughby Road, Birmingham, Alabama. The realty shall be placed on the market and sold, with the net proceeds divided with Fifty Percent (50%) to the [wife] and Fifty Percent (50%) to the [husband]. Pending such sale, the [husband] shall be responsible for and pay the mortgage payments, taxes, and insurance due on said realty, and shall indemnify and hold harmless the [wife] therefrom.”
(Emphasis added.)
“ ‘A divorce judgment should be interpreted or construed as other written instruments are interpreted or construed. Sartin v. Sartin, 678 So.2d 1181 (Ala.Civ.App.1996). “The words of the agreement are to be given their ordinary meaning, and the intentions of the parties are to be derived from them.” Id. at 1183. Whether an agreement is ambiguous is a question of law for the trial court. Wimpee v. Wimpee, 641 So.2d 287 (Ala.Civ.App.1994). An agreement that by its terms is plain and free from ambiguity must be enforced as written. Jones v. Jones, 722 So.2d 768 (Ala.Civ.App.1998). An ambiguity exists if the agreement is susceptible to more than one meaning. Vainrib v. Downey, 565 So.2d 647 (Ala.Civ.App.1990). However, if only one reasonable meaning clearly emerges, then the agreement is unambiguous. Id.’
“R.G. v. G.G., 771 So.2d 490, 494 (Ala.Civ.App.2000).”
Belcher v. Belcher, 18 So.3d 946, 948 (Ala.Civ.App.2009). In this case, the divorce judgment did not define the term “net proceeds.” This court has defined “net sale proceeds” as the “gross proceeds less closing expenses and mortgage payoffs.” Brown v. Brown, 960 So.2d 712, 715 n. 3 (Ala.Civ.App.2006) (emphasis added). The plain language of the provision at issue did not require the husband to pay off the entire mortgage; it required only that he make the mortgage payments pending the sale of the house. There is no assertion that the husband did not make the payments as ordered. We conclude that the language of provision four of the divorce judgment is plain and unambiguous on its face, and, thus, it must be given its ordinary meaning. Because the divorce judgment did not require the husband to pay the mortgage indebtedness in its entirety before the sale of the Willoughby Road house, the trial court improperly excluded the amount of the mortgage payoff when calculating the “net proceeds” from the sale of the Willoughby Road house. The $101,135.19[1] that the wife received at the closing constituted the net proceeds derived from the sale of the house, and that is the amount that must be divided equally between the husband and the wife.
In reaching this conclusion, we recognize that the divorce judgment required each party to pay the debts incurred in his or her respective names. However, the wife’s assertion that the Willoughby Road *1154 house was a debt incurred only in the husband’s name because only he signed the promissory note is not well taken. The wife readily acknowledges that she and the husband jointly owned the Wil-loughby Road house — -they took title in both their names, with the right of surviv-orship. In making her assertion, the wife ignores the fact that both she and the husband signed the mortgage for the Wil-loughby Road house. The mortgage defines the “borrower” as both “Chivers Woodruff and wife, Julia M. Woodruff.” A mortgage is a “lien against property that is granted to secure an obligation (such as a debt) and that is extinguished upon payment or performance according to stipulated terms.” Black’s Law Dictionary 1031 (8th ed.2004). Black’s also uses the term “debtor” to define a mortgagor. Black’s Law Dictionary 1012 (6th ed.1990).
Based on the record before us, we conclude that the debt for the purchase of the Willoughby Road house was not incurred solely by the husband but was incurred by both the husband and the wife. Under the facts of this case, the wife’s assertion to the contrary is without merit.
On her cross-appeal, the wife contends that the trial court exceeded its discretion in ordering her to pay the husband $10,000 for personal property that was awarded to him in the original divorce judgment but that he had not received at the time of the hearing on the petitions for a rule nisi. The husband and the wife gave conflicting testimony as to whether the wife had “care and control” of the items at issue and the steps the parties took to locate those items.
“ ‘ “When ore tenus evidence is presented, a presumption of correctness exists as to the trial court’s findings on issues of fact; its judgment based on these findings of fact will not be disturbed unless it is clearly erroneous, without supporting evidence, manifestly unjust, or against the great weight of the evidence. J & M Bail Bonding Co. v. Hayes, 748 So.2d 198 (Ala.1999); Gaston v. Ames, 514 So.2d 877 (Ala.1987). When the trial court in a nonjury case enters a judgment without making specific findings of fact, the appellate court ‘will assume that the trial judge made those findings necessary to support the judgment.’ Transamerica Commercial Fin. Corp. v. AmSouth Bank, 608 So.2d 375, 378 (Ala.1992). Moreover, ‘[u]nder the ore tenus rule, the trial court’s judgment and all implicit findings necessary to support it carry a presumption of correctness.’ Transamerica, 608 So.2d at 378. However, when the trial court improperly applies the law to [the] facts, no presumption of correctness exists as to the trial court’s judgment. Allstate Ins. Co. v. Skelton, 675 So.2d 377 (Ala.1996); Marvin’s, Inc. v. Robertson, 608 So.2d 391 (Ala.1992); Gaston, 514 So.2d at 878; Smith v. Style Advertising, Inc., 470 So.2d 1194 (Ala.1985); League v. McDonald, 355 So.2d 695 (Ala.1978). ‘Questions of law are not subject to the ore tenus standard of review.’ Reed v. Board of Trustees for Alabama State Univ., 778 So.2d 791, 793 n. 2 (Ala.2000). A trial court’s conclusions on legal issues carry no presumption of correctness on appeal. Ex parte Cash, 624 So.2d 576, 577 (Ala.1993). This court reviews the application of law to facts de novo. Allstate, 675 So.2d at 379 (‘[W]here the facts before the trial court are essentially undisputed and the controversy involves questions of law for the court to consider, the [trial] court’s judgment carries no presumption of correctness.’).” ’
*1155 “[Farmers Ins. Co. v. Price-Williams Assocs., Inc.,] 873 So.2d [252] at 254-55 [ (Ala.Civ.App.2003) ] (quoting City of Prattville v. Post, 831 So.2d 622, 627-28 (Ala.Civ.App.2002)).”
Kellis v. Estate of Schnatz, 983 So.2d 408, 412 (Ala.Civ.App.2007). In ore tenus proceedings, the trial court has the advantage of seeing and hearing the witnesses and assessing their demeanor and is in the best position to decide among conflicting testimony which testimony is to be believed. Woods v. Woods, 653 So.2d 312, 314 (Ala.Civ.App.1994). In this case, the trial court apparently rejected the wife’s assertions that she did not have care and control over the items and instead credited the testimony of the husband. Our deferential standard of review compels us to affirm the trial court’s judgment based on that conclusion because it is not “ “ ‘clearly erroneous, without supporting evidence, manifestly unjust, or against the great weight of the evidence.” ” ’ Kellis, 983 So.2d at 412. We cannot reweigh the evidence and substitute our judgment for that of the trial court. Ex parte R.E.C., 899 So.2d 272, 279 (Ala.2004).
The wife also contends that the trial court erred in not ordering the husband to execute the deed conveying the Willoughby Road house to the purchasers. The record indicates that the wife raised this issue for the first time in her Rule 59, Ala. R. Civ. P., motion to alter, amend, or vacate the order entered on the parties’ petitions for a rule nisi.
“It is well settled that ‘a trial court has the discretion to consider a new legal argument in a post-judgment motion, but is not required to do so,’ and that ‘[w]e will reverse only if the trial court abuses that discretion.’ Green Tree Acceptance, Inc. v. Blalock, 525 So.2d 1366, 1369-70 (Ala.1988). See also Diamond v. Aronov, 621 So.2d 263, 266-67 (Ala.1993); Blackmon v. King Metals Co., 553 So.2d 105, 106 (Ala.1989); D.J. Sherwood Transp., Inc. v. Road Shows, Inc., 656 So.2d 884, 887 (Ala.Civ.App.1995).”
Steele v. Rosenfeld, LLC, 936 So.2d 488, 494 (Ala.2005). The wife has failed to demonstrate that the trial court erred when it exercised its discretion not to consider this belatedly raised contention. This court is hopeful, however, that, with the disposition of this matter, the parties can work together to take the steps necessary to ensure that the Willoughby Road house is properly conveyed to the purchaser, thus avoiding even more litigation.
For the reasons set forth above, that portion of the judgment ordering the husband to pay the wife $27,539.55 for her share of the net proceeds of the sale of the Willoughby Road house is reversed, and the cause remanded for entry of a judgment consistent with this opinion. The remainder of the trial court’s judgment is affirmed.
The wife’s request for the award of attorney fees on appeal is denied.
APPEAL — REVERSED AND REMANDED.
CROSS-APPEAL — AFFIRMED.
PITTMAN, BRYAN, THOMAS, and MOORE, JJ., concur.

. Arguably, the $1,500 in earnest money the wife received also should be considered part of the "net proceeds”; however, the parties did not raise the issue of the earnest money on appeal.