PER CURIAM.
This appeal stems from an action filed in the Montgomery Circuit Court by Chantilly Properties I, LLC (“the landlord”), against David P. Justice (“the tenant”), an individual who had done business under the trade name “Mattress Fair” and who had leased a retail space in a Montgomery shopping center from the landlord in 2007; the landlord alleged in its complaint that the tenant had breached the lease and owed the landlord $17,259.97 plus attorney fees and expenses. The tenant, appearing pro se, directed a letter to the trial court that he intended as an answer to the complaint; in pertinent part, he admitted that he owed two months’ worth of rental fees minus his security deposit but that he owed nothing else because he had validly invoked an “escape clause” in the lease. After a brief ore tenus proceeding, the trial court entered a judgment in favor of the landlord but assessed damages at $10,000. Following the denial of the landlord’s postjudgment motion to alter, amend, or vacate the judgment, the landlord appealed from the trial court’s judgment to this court, which has jurisdiction based upon the amount in controversy (see Ala.Code 1975, § 12-3-10).
At trial, the landlord’s property manager testified that the tenant and the landlord had entered into a lease agreement. The original lease agreement introduced into evidence by the landlord,[1] which dates from January 2007, consisted of a series of numbered paragraphs. Although the land *967 lord’s copy of the lease agreement ends at Paragraph 28.2, Paragraph 1.1 (u) expressly states that “[ajdditional provisions numbered 29, 30, 31 and 32 are included on Addendum to Lease attached hereto.”
During the manager’s testimony on direct examination, he stated that the tenant’s monthly rental had been changed to $5,124.66 pursuant to a February 2010 amendment to the lease agreement, and the manager further testified that, based upon his calculations, the tenant owed the landlord a total of $50,049.28. However, the amendment to the lease agreement, in addition to containing four additional paragraphs pertaining to the lease term and payment of agreed charges, also stated that, “[ejxcept as otherwise amended above, the Lease and Guaranty is in full force and effect and all terms and conditions remain the same.”
During cross-examination, the tenant asked whether the landlord’s manager was familiar with a term that had apparently been contained in the original lease agreement (and appeared in the tenant’s copy thereof) but that did not appear in the copy of the agreement offered into evidence by the landlord, at which time the manager admitted that the following provision had indeed appeared in the original lease agreement:
“In the event Bruno’s [ie., a grocery that was another former tenant of the landlord’s] ceases to operate in the Shopping Center for more than one hundred eighty (180) consecutive days, and Tenant’s sales decrease more than thirty percent (30%) or more for the one hundred eighty (180) days after store closes, Tenant shall have the right to terminate this Lease with a sixty (60) day written notice to Landlord, unless Landlord or Landlord’s assigns replaces Bruno’s with a comparable major tenant within the Shopping Center.”
That language appears as “Article 32” in a document entitled “Addendum to Lease” that was introduced into evidence by the tenant, and its numbering matches one of the numbered paragraphs of the addendum to the lease agreement identified in paragraph l.l(u). The tenant, during his testimony, stated that Bruno’s had moved out of its leased space in 2009, that he had moved out of his leased store but had returned in January 2010, that he had tried and failed to make his business work without the Bruno’s store being a going concern, and that he had then given notice that he would be exercising his rights under the clause identified as “Article 32.” In the tenant’s words: “With no anchor tenant in the shopping center, there was no traffic in the shopping center. And I could not — the total sales were less than electricity and salary I was paying my employee, so I had to give it up.”
In this case, the trial court, in “find[ing] the issues in favor of’ the landlord but simultaneously determining that the tenant should pay only $10,000 instead of over $50,000 to the landlord, appears to have implicitly accepted the proposition, advanced by the tenant, that the language included in Article 32 — which the tenant’s appellate counsel have termed an “escape clause” — was indeed a part of the parties’ original lease agreement and that the tenant, based upon his own trial testimony, had properly invoked that “escape clause” by providing two months’ notice of his intent to terminate the lease agreement as amended. There is evidence to support that implicit determination, and we, as an appellate court, are not at liberty to disturb it. See Transamerica Commercial Fin. Corp. v. AmSouth Bank, N.A, 608 So.2d 375, 378 (Ala.1992) (when trial judge makes no specific findings of fact, appellate court will assume that the trial judge made those findings necessary to support the judgment; trial court’s judgment and *968 all implicit findings necessary to support it carry a presumption of correctness and will not be reversed unless found to be plainly and palpably wrong).
Although there is evidence to support the trial court’s implicit determination regarding the tenant’s timely and proper invocation of the escape clause, the tenant’s appellate counsel have conceded, and we agree, that there is no evidentiary basis upon which the $10,000 damages award can be said properly to stand. The tenant admitted at trial that he owed two months of rental charges to the landlord pursuant to the escape clause because he had not paid rent for that period, and neither party disputes that the prevailing monthly rental charge as stated in the amended lease agreement was $5,124.66. Thus, although we affirm the trial court’s implicit determination that the tenant properly invoked the escape clause, we reverse the trial court’s damages award, and we remand the cause for that court to correctly determine, from the existing record, the appropriate amount of damages to award to the landlord with respect to the two-month period after the tenant’s triggering of the escape clause and to enter a judgment in conformance with that determination.
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED WITH INSTRUCTIONS.
All the judges concur.

. Although none of the original evidentiary exhibits from the trial were initially sent to this court by the trial-court clerk, those exhibits were transmitted to this court after submission of the appeal. Cf. Rule 13, Ala. R.App. P.