BRYAN, Judge.
Diamond Concrete & Slabs, LLC (“Diamond”), appeals from a judgment as a matter of law (“JML”) in favor of the Andalusia-Opp Airport Authority (“the Airport Authority”)[1] and Southern Structures Corporation (“Southern”) with respect to Diamond’s claim under § 8-29-1 et seq., Ala.Code 1975 (“the Prompt Pay Act”).[2] We reverse and remand with instructions.
In May 2005, the Airport Authority, which owns the Andalusia-Opp Airport, contracted with Southern to act as the general contractor in the construction of an aircraft-modification hangar (“the hangar”) that could be leased to EJM, a company that modifies aircraft. Southern, which was responsible for selecting the subcontractors for the job, requested that Diamond bid on the subcontract to pour and finish the 26,000-square-foot concrete floor of the hangar. On July 12, 2006, Diamond submitted a bid indicating that, for a total price of $35,161, it would install plastic, wire mesh, and porous fill before pouring the concrete; pour the concrete in two pours; apply one application of a shake-on hardener to the drying concrete; and finish the concrete after the application of the shake-on hardener. The bid indicated that Diamond would not provide materials such as the plastic, the wire mesh, the porous fill, the concrete, and the shake-on hardener. It also indicated that Diamond would not provide engineering and testing services. Southern orally accepted Diamond’s bid.
After accepting Diamond’s bid, Southern informed Diamond that the floor would have to be poured in three pours instead of *75 two and that there would have to be two applications of the shake-on hardener to the drying concrete instead of one. Diamond’s president testified that he informed Southern’s president that the change from two pours to three and the change from one application of shake-on hardener to two would increase Diamond’s expenses by one-third and that Diamond would have to be compensated for the additional cost. Diamond’s president further testified that Southern’s president stated that “[a]s long as [Diamond’s charge for the third day of work is] in line with the other two days it will be taken care of.” Southern’s president denied making that statement.
In July 2006, Diamond poured the concrete in three pours, applied the shake-on hardener in two applications, and finished the concrete after the application of the shake-on hardener. Other parties provided the materials used by Diamond, including the concrete and the shake-on hardener. The concrete floor that resulted was defective; however, the evidence was in conflict regarding the cause of the defects. Southern employed another subcontractor to correct the defects in the floor.
On August 31, 2006, Diamond sent Southern a bill totaling $56,416. Southern paid Diamond $35,161 and paid another concrete company $7,200. Diamond gave Southern credit for the $7,200 payment made to the other concrete company but claimed that Southern still owed it $14,055. Southern refused to pay Diamond the $14,055.
On February 27, 2007, Diamond sued Southern and the Airport Authority in the Montgomery Circuit Court. Diamond stated a claim of breach of contract against Southern only, a claim of conversion against both Southern and the Airport Authority, and a claim pursuant to the Prompt Pay Act (“the prompt-pay claim”) against both Southern and the Airport Authority. Diamond sought to recover the $14,055 balance of its August 31, 2006, bill under each of those claims. In addition, it sought to recover “interest applied in accordance with Ala.Code 1975, § 8-29-3(d),”[3] and “reasonable attorney’s fees, court costs and expenses” under the prompt-pay claim.[4] The Montgomery Circuit Court transferred Diamond’s action to the Covington Circuit Court. Answering Diamond’s complaint, Southern and the Airport Authority denied that they were liable to Diamond. In addition, they asserted counterclaims of negligence against Diamond.[5]
*76 The action proceeded to trial before a jury. At the close of all the evidence, the Airport Authority’s attorney (1) orally moved for a JML with respect to Diamond’s prompt-pay claim on the ground that Diamond should have based that claim on § 41-16-8, Ala.Code 1975, instead of § 8-29-1 et seq., Ala.Code 1975, and (2) orally moved for a JML with respect to Diamond’s conversion claim on the ground that Diamond had failed to prove a prima facie case of conversion. Southern’s attorney also orally moved for a JML with respect to Diamond’s conversion claim; however, he did not move for a JML with respect to Diamond’s prompt-pay claim, although he presented argument supporting the Airport Authority’s motion for a JML with respect to that claim. Diamond’s attorney moved for a JML in favor of Diamond with respect to its prompt-pay claim. The trial judge did not formally rule on those motions; however, he indicated that the only claims he would include in his jury charge were a breach-of-contract claim by Diamond against both Southern and the Airport Authority[6] and the counterclaims of negligence by Southern and the Airport Authority against Diamond. He further indicated that, although he would not charge the jury regarding Diamond’s prompt-pay claim, he would consider that claim insofar as it sought interest and an attorney fee after the jury returned its verdict. Diamond’s attorney indicated that he objected to the trial court’s proposed jury charge insofar as it did not charge the jury regarding Diamond’s prompt-pay claim.
Thereafter, the trial judge gave the jury the following instructions regarding Diamond’s breach-of-contract claim:
“Now in this case the plaintiff, Diamond Concrete, has filed a suit against the defendants, Southern Structures and the Andalusia Airport Authority — Andalusia-Opp Airport Authority for breach of contract. The plaintiff, Diamond Concrete, claims that the plaintiff entered into a contract with these defendants whereby the plaintiff would pour or install a concrete floor in an airport hangar according to certain plans for a contract price.
“Diamond Concrete has alleged that the defendants have breached that agreement by failing to have paid the amount due to Diamond, and that as a result of that failure or that breach that the plaintiff is entitled to damages from these defendants.
“Now the plaintiff has the burden of proving [its] claims against the defendants to your reasonable satisfaction. In order to recover on its claim, Diamond Concrete must prove to your reasonable satisfaction each of the following:
“First, that there was an agreement between Diamond Concrete and the defendants; second, that the plaintiff fulfilled [its] obligations under that agreement; third, that the defendants have failed to fulfill their obligations under that agreement; and fourth, that as a result of the defendants’ failure to fulfill their obligations under the agreement the plaintiff is entitled to damages.
“Now if after a careful consideration of all the evidence in the case you find that the plaintiff, Diamond Concrete, has sufficiently proved its claim for breach of contract, then it would be your duty to return a verdict in favor of Diamond Concrete and against Southern Structures and the Airport Authority on the breach of contract claim and then assess the amount of damages, if any, you determine that Diamond is entitled to.
*77 “On the other hand, if after a careful consideration of all the evidence you find that the plaintiff, Diamond Concrete, has not sufficiently proved its claim against Southern Structures and the Airport Authority on its breach of contract claim, then it would be your duty to return a verdict in favor of Southern Structures and the Airport Authority on Diamond’s breach of contract claim.
“Now in the event that you do find in favor of Diamond Concrete on its breach of contract claim and determine to award Diamond Concrete damages on that claim, I will tell you that damages for the breach of a contract is that amount of money that would place the injured party in the same situation that he would have been in if the contract had not been breached.
“And, of course, if you do not find that Southern Structures and the Airport Authority breached the agreement, then Diamond Concrete would not be entitled to any damages under its breach of contract claim.
“Now in answer to Diamond Concrete’s complaint, these defendants have each denied that they are liable to Diamond Concrete for any alleged breach of contract, and they assert that they do not owe Diamond Concrete any more money than that which has already been paid to Diamond Concrete.”
The trial judge also charged the jury regarding Southern’s and the Airport Authority’s negligence counterclaims against Diamond. He did not charge the jury regarding Diamond’s prompt-pay claim, although he did make provision on the breach-of-contract verdict form for the jury, in the event it found in favor of Diamond on that claim, to indicate the date when Diamond should have been paid.[7] Moreover, the trial judge charged the jury:
“This [breach-of-contract] verdict form differs from the other two [relating to Southern’s and the Airport Authority’s counterclaims] in this way. If in fact you do come to the point where you — if you find from the evidence that Diamond Concrete is entitled to recover, there’s one other thing under that that says: If you find in favor of Diamond Concrete and award damages on its claim, answer the following question: ‘On what date do you find that Diamond Concrete should have been paid?’
“So, of course, the only time you would answer that is if, in fact, you do find that Diamond Concrete should have been paid under their breach of contract claim. And there’s a line there for you to put the month, date and year.”
After the trial judge had charged the jury and before the jury had retired to begin its deliberations, Diamond’s attorney objected to the trial judge’s omission of a charge regarding Diamond’s prompt-pay claim, and the attorney for the Airport Authority made the following objection:
“Your Honor, our only objection would be for the same reason that [Diamond’s attorney] put his on the record. We would object to the Court’s general charge where the only option given to the jury was that a unified verdict be returned against both defendants. There was no option given to the jury to select among the defendants in the form of Southern Structures or the Airport *78 [Authority], and we think that makes it an incorrect statement of the law.”
The trial judge did not charge the jury further, and the jury began its deliberations. On June 24, 2010, the jury returned the following verdict with respect to Diamond’s breach-of-contract claim:
“As to the Claims of Diamond Concrete against Southern Structures and the Andalusia Airport Authority.
“ X We find in favor of Diamond Concrete and award damages in the amount of $14,055.
“If you find in favor of Diamond Concrete and award damages on its claim, answer the following question:
“On what date do you find that Diamond Concrete should have been paid?
“9 30 06
Month/Date/Year”
The jury also returned verdicts in favor of Diamond with respect to the negligence counterclaims of Southern and the Airport Authority.
On June 30, 2010, Diamond moved for a hearing to determine the interest, attorney fee, and expenses it was entitled to recover under its prompt-pay claim. On July 1, 2010, the trial judge entered a judgment (“the July 1, 2010, judgment”) titled “Final Judgment,” which stated:
“This cause came on for trial on the 21st thru [sic] 24th days of June, 2010, before a good and lawful jury ... who heard the evidence and then retired to deliberate. Thereupon said jury, being upon their oaths, returned to open Court with a verdict which read:
“ We find in favor of Diamond Concrete and award damages in the amount of $14,055.00.’
“It is therefore the ORDER and JUDGMENT of this Court that judgment is entered for the Plaintiff, Diamond Concrete, separately and severally against the Andalusiar-Opp Airport Authority and Southern Structures.
“It is further the ORDER and JUDGMENT of this Court that the costs of this cause are hereby taxed against the Defendants.”
(Emphasis added.)
On July 9, Diamond moved to alter, amend, or vacate the July 1, 2010, judgment on the ground that it purported to be a final judgment despite its having been entered before the trial judge had made a determination regarding the interest, attorney fee, and expenses to which Diamond was entitled on its prompt-pay claim and its having made no provision for a subsequent determination regarding those issues. On July 23, 2010, the Airport Authority filed a motion titled- “Motion to Renew Motion for Judgment as a Matter of Law or in the Alternative for JNOV and for Relief pursuant to Rule 59” in which it stated:
“COMES NOW the [Airport Authority], pursuant to Ala. R. Civ. Procedure, Rule 50(b) and renews its Motion for Judgment as a Matter of Law filed at the conclusion of the evidence, prior to submission of the issues to the jury, and which this Court took under advisement at that time, and pursuant to Ala. R. Civ. Procedure, Rule 59, and argues to the Court as follows:
“1. Diamond Concrete failed to offer sufficient evidence, as a matter of law, to establish, a claim for relief under Ala. Code § 8-29-6 (1975);
“2. Diamond Concrete has failed to offer sufficient evidence, as a matter of law, to establish a claim for relief under any of the theories sued for, with the possible exception of quantum meruit, which was submitted to and charged to the jury.
*79 “WHEREFORE, for the above reasons, the Airport Authority renews its Motion for Judgment as a Matter of Law which was previously filed in this case, or in the alternative for JNOV, and for a modification of the Judgment entered in this case to reflect its ruling on that renewed motion. Moreover, the Airport [Authority] moves this Court, if necessary, to grant a new trial on the issues contained herein, or to reopen the evidence to submit additional evidence in support of these arguments.”
On August 24, 2010, Diamond filed a response in opposition to the Airport Authority’s motion. In pertinent part, Diamond’s response stated:
“Defendant Andalusia-Opp Airport Authority argues that Plaintiff Diamond failed to offer sufficient evidence to establish a claim for relief under Ala.Code 1975, § 8-29-6. However, [the Airport Authority’s] argument in this regard is without merit.
“Contrary to [the Airport Authority’s] present assertion, Plaintiff Diamond [did] present substantial evidence supporting its claims under Ala.Code 1975, § 8-29-6. In particular, Clark Dunn testified extensively that Plaintiff Diamond entered into a sub-contract relationship with [the Airport Authority and Southern] and that Plaintiff Diamond completed certain work for [the Airport Authority and Southern] in accordance with that sub-contract. During the week long trial, the jury in this cause heard repetitive testimony from both plaintiff and defense witnesses establishing that Defendant Southern Structures was the general contractor and that Defendant Andalusia-Opp Airport Authority was the property owner for the project in question. Mr. Dunn not only testified extensively regarding the bidding process that [Diamond] went through, but also testified in detail about [the Airport Authority’s and Southern’s] agreement concerning payment of [Diamond’s] invoices, [Diamond’s] work performed on the project and [the Airport Authority’s and Southern’s] failure to pay the invoices in question. In fact, multiple exhibits were marked evidencing [Diamond’s] bid on the project, [the Airport Authority’s and Southern’s] acceptance of the bid, [Diamond’s] invoice and [the Airport Authority’s and Southern’s] failure to pay the invoice. Therefore. Defendant Andalusia-Opp Airport Authority’s unsupported claim that [Diamond] failed to present substantial evidence can only be seen as wholly without merit.
“Next, while vague, Defendant Andalusia-Opp Airport Authority seems to argue that quantum meruit was the only theory of liability against [the Airport Authority and Southern] that the jury was charged on. If this is [the Airport Authority’s] contention, this Court is very aware that its charges were much more broad than [the Airport Authority] suggests. In fact, this Court should recall that this Court specifically ruled, over [Diamond’s] preserved objection that the jury would be charged on Breach of Contract, among other charges, and that [Diamond’s prompt-pay] claims would be addressed by post-trial motion. Thereafter, this Court so instructed the jury and the jury quickly returned a verdict for [Diamond], Accordingly, Defendant Andalusia-Opp Airport Authority’s contentions in this regard are also erroneous.
“WHEREFORE, for reasons set forth herein, [Diamond] respectfully suggests that [the Airport Authority’s] Motion to Renew Motion for Judgment as a Matter of Law or in the alternative for JNOV and Relief Pursuant to Rule 59 Should be DENIED.”
*80 On August 31, 2010, the trial judge heard Diamond’s motion seeking a determination regarding the interest, attorney fee, and expenses it was entitled to recover on its prompt-pay claim; Diamond’s motion to alter, amend, or vacate the July 1, 2010, judgment; and the Airport Authority’s “Motion to Renew Motion for Judgment as a Matter of Law or in the Alternative for JNOV and for Relief pursuant to Rule 59.” The record does not contain a transcript of that hearing. On October 19, 2010, the trial judge entered an order stating:
“During the trial of this matter, [the Airport Authority and Southern] moved this Court for Judgment as a Matter of Law on Diamond Concrete’s claims, [Diamond] opposed those Motions, and[,] by agreement of the parties, the Court withheld full adjudication of those Motions until a date post verdict. Moreover, the Airport Authority renewed that Motion post verdict, and all parties argued the Motions presented by [the Airport Authority and Southern] again by agreement, before this Court. The Court has considered the arguments of counsel and the evidence before the Court presented during trial, and after considering same, grants the Motions in part as follows.
“The Motions are granted insofar as they are directed to Diamond Concrete’s claims under Ala.Code § 8-29-1 et seq. (including § 8-29-6) in that the evidence produced during the trial of this matter does not create a question for resolution by the jury on those issues. Otherwise, the Court denies said Motions.”
Diamond then timely appealed to this court. Neither Southern nor the Airport Authority cross-appealed the judgment entered on the jury verdict against them with respect to Diamond’s breach-of-contract claim.
“ ‘The appellate standard for reviewing a ruling on a motion for judgment as a matter of law, a “JML,” is the same as the standard for the original decision by the trial court. Palm Harbor Homes, Inc. v. Crawford, 689 So.2d 3 (Ala.1997).
[[Image here]]
“‘JML in favor of a movant who does not assert the claim or affirmative defense but who only opposes it, and who therefore does not bear the burden of proof, is appropriate in either of two alternative cases. One is that the claim or affirmative defense is invalid in legal theory. See Harkins & Co. v. Lewis, 535 So.2d 104 (Ala.1988). The other is that one or more contested essential elements of the claim or affirmative defenses is unsupported by substantial evidence. See Banks v. Harbin, 500 So.2d 1027 (Ala.1986), and McKerley [v. Etowah-DeKalb-Cherokee Mental Health Board, Inc., 686 So.2d 1194 (Ala.Civ.App.1996) ]. If either alternative be true, JML is appropriate. See Harkins, supra, Banks, supra, and McKerley, supra. If, however, the nonmovant’s claim or affirmative defense is valid in legal theory and is supported by substantial evidence on every contested element, JML is inappropriate irrespective of the presence or weight of countervailing evidence. See Driver [v. National Sec. Fire & Cas. Co., 658 So.2d 390 (Ala.1995)], and First Financial [Ins. Co. v. Tillery, 626 So.2d 1252 (Ala.1993) ].
“ ‘_ West v. Founders Life Assurance Co. of Florida, 547 So.2d 870, 871 (Ala.1989), explains, “substantial evidence is evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of *81 the fact sought to be proved.” A trial court deciding a motion for JML and an appellate court reviewing such a ruling must accept the tendencies of the evidence most favorable to the nonmovant, Wal-Mart Stores, Inc. v. Manning, 788 So.2d 116 (Ala.2000), Southern Energy Homes, Inc. v. Washington, 774 So.2d 505 (Ala.2000), and Palm Harbor Homes, supra, and must resolve all reasonable factual doubts in favor of the nonmovant, Willis v. Parker, 814 So.2d 857 (Ala. 2001).’
“Ex parte Helms, 873 So.2d 1139, 1143-44 (Ala.2003).”
Hill v. Premier Builders & Realty, LLC, 56 So.3d 669, 676-77 (Ala.Civ.App.2010).
Diamond presents four arguments challenging the JML in favor of the Airport Authority and Southern with respect to Diamond’s prompt-pay claim. First, Diamond argues that the trial judge erred in entering the JML because, Diamond says, the Airport Authority failed to assert insufficiency of the evidence as a ground for its motion for a JML with respect to Diamond’s prompt-pay claim at the close of all the evidence. Second, Diamond argues that the trial judge erred in entering the JML in favor of Southern because, Diamond says, Southern failed to move for a JML at the close of all the evidence with respect to Diamond’s prompt-pay claim. Third, Diamond argues that the trial judge erred in entering the JML because, Diamond says, it introduced sufficient evidence in support of its prompt-pay claim to withstand the motion for a JML. Fourth, Diamond argues that the trial judge erred in entering the JML because, Diamond says, the entry of the JML is inconsistent with the judgment in Diamond’s favor with respect to its breach-of-contract claim.
The record does not indicate that Diamond presented its first, second, or fourth arguments to the trial judge. Therefore, we cannot consider those arguments. See Andrews v. Merritt Oil Co., 612 So.2d 409, 410 (Ala.1992) (“This Court cannot consider arguments raised for the first time on appeal; rather, our review is restricted to the evidence and arguments considered by the trial court.”).
The record does indicate that Diamond presented its third argument to the trial judge; therefore, we will consider it. Section 8-29-2 of the Prompt Pay Act provides:
“Performance by a contractor, subcontractor, or sub-subcontractor in accordance with the provisions of his or her contract entitles them to payment from the party with whom they contract. All contracts between parties require a date of payment.”
(Emphasis added.)
Section 8-29-3(b) of the Prompt Pay Act provides:
“When a subcontractor has performed pursuant to his or her contract and submits an application or pay request for payment or an invoice for materials to a contractor in sufficient time to allow the contractor to include the application, request, or invoice in his or her own pay request submitted to an owner, the contractor shall timely pay to the subcontractor in accordance with the payment terms agreed to by the contractor and subcontractor, but if payment terms are not agreed to, then within seven days of receipt of payment from owner by mailing via first class mail or delivering the amount received for the subcontractor’s work and materials based on work completed or service provided under the contract.”
(Emphasis added.)
Section 8-29-1(1) of the Prompt Pay Act defines a contractor as “[a]ny person, indi *82 vidual, firm, corporation, partnership, or other legal entity who contracts with an owner to improve real property or perform construction services for an owner.” Section 8-29-1(4) of the Prompt Pay Act defines an owner as “[a]ny person, individual, firm, corporation, partnership, or other legal entity who has an interest in the real property improved and for whom an improvement is made, who either directly or by agent ordered the improvement to be made.” Section 8-29-1(6) of the Prompt Pay Act defines a subcontractor as “[a]ny person, individual, firm, corporation, partnership, or other legal entity who has contracted to furnish labor or materials to, or has performed labor or supplied materials for a contractor in connection with a contract to improve real property.”
Accepting the tendencies of the evidence most favorable to Diamond, the nonmov-ant, our review of the record indicates the following. Diamond introduced substantial evidence establishing that Southern was a contractor as that term is defined in the Prompt Pay Act, that Diamond was a subcontractor as that term is defined by the Prompt Pay Act, and that Diamond had a subcontract with Southern to pour the concrete floor of the hangar in three pours, to apply shake-on hardener to the drying concrete in two applications, and to finish the concrete after applying the shake-on hardener. Diamond introduced substantial, although not uncontradicted, evidence indicating that Southern changed the work required of Diamond after Diamond had submitted its bid in the amount of $35,161 on July 12, 2006, and that Southern agreed to pay the increased cost that resulted from the change in the work to be performed by Diamond. Diamond also introduced substantial, although not uncontradicted, evidence indicating that it performed its work under the subcontract in a good and workmanlike manner. Moreover, Diamond introduced substantial evidence establishing that it sent Southern a bill for its work on August 31, 2006, and that Southern refused to pay Diamond $14,055 of the amount billed.
The evidence tended to prove that the Airport Authority was an owner rather than a contractor as those terms are defined by the Prompt Pay Act and that Diamond did not have a contract with the Airport Authority. Moreover, Diamond’s complaint stated a breach-of-contract claim against Southern only. However, the trial judge submitted to the jury the breach-of-contract claim against the Airport Authority and Southern, and, although the Airport Authority’s attorney objected that the trial judge’s instructions had not given the jury the option to return a verdict against one of the defendants but not both, the Airport Authority’s attorney did not assert that the breach-of-contract claim should not have been submitted against the Airport Authority at all. The jury returned a verdict against not only Southern but also the Airport Authority on Diamond’s breach-of-contract claim. The trial judge entered a judgment on that jury verdict, and the Airport Authority has not cross-appealed that judgment. Given this procedural history, we conclude that, despite the absence of any evidence establishing that a contract existed between Diamond and the Airport Authority, it has become the law of the case that Diamond’s subcontract was with the Airport Authority as well as Southern. Cf. Beiersdoerfer v. Hilb, Rogal & Hamilton Co., 953 So.2d 1196, 1209 (Ala.2006) (“‘“Unchallenged jury instructions become the law of the case. Louisville & Nashville R.R. v. Atkins, 435 So.2d 1275 (Ala.1983).” Clark v. Black, 630 So.2d 1012, 1017 (Ala.1993). “The jury is bound to follow such instructions, even if they are erroneous. Lee v. Gidley, 252 Ala. 156, 40 So.2d 80 (1949) (erroneous instructions became the law of the case, and a judgment entered on the jury’s verdict comporting with those instructions would not be reversed on ap *83 peal).” 630 So.2d at 1017.’ ” (quoting BIC Corp. v. Bean, 669 So.2d 840, 844 (Ala.1995))).
Likewise, the jury found that Southern and the Airport Authority had breached their contract with Diamond and owed Diamond $14,055. Moreover, the jury found that Diamond should have been paid on September 30, 2006, 30 days after it sent Southern its August 31, 2006, invoice.
Accordingly, we conclude that, either through the introduction of substantial evidence or through the jury’s verdict, which has become the law of the case, Diamond has established that it had a subcontract with Southern and the Airport Authority, that it was entitled to the payment of $14,055 from Southern and the Airport Authority pursuant to that subcontract, and that Southern and the Airport Authority failed to pay Diamond the $14,055. Therefore, we conclude that the trial judge erred in entering a JML in favor of Southern and the Airport Authority with respect to Diamond’s prompt-pay claim. Consequently, we reverse that JML and remand the cause for the trial judge to determine whether Diamond is entitled to recover interest, an attorney fee, and expenses under its prompt-pay claim.
Diamond also argues that the trial judge erred in denying Diamond’s motion to alter, amend, or vacate the July 1, 2010, judgment. That motion challenged the July 1, 2010, judgment on the ground that it purported to be a final judgment despite its having been entered before the trial judge had made a determination regarding the interest, attorney fee, and expenses to which Diamond was entitled on its prompt-pay claim and its having made no provision for a subsequent determination regarding those issues. Although the July 1, 2010, judgment was titled “Final Judgment,” it is well settled that the character of a judgment is determined by its substance rather than its descriptive title. See Joseph v. MTS Inv. Corp., 964 So.2d 642, 645 n. 1 (Ala.2006) (“[Tjhis Court has stated many times that ‘[t]he character of a pleading, or of a judgment or decree is determined from its essential substance, and not from its descriptive name or title.’ State v. Pettis, 275 Ala. 450, 451, 156 So.2d 137, 138 (1963).”). Despite its title, the July 1, 2010, judgment was not a final judgment because it disposed of fewer than all the claims. See Heaston v. Nabors, 889 So.2d 588, 590 (Ala.Civ.App.2004) (“A final judgment is one that disposes of all the claims and controversies between the parties.”). Accordingly, because a postjudgment motion filed pursuant to Rule 59 applies only to final judgments and because the July, 1, 2010, judgment was not a final judgment, we find no error in the trial judge’s denying Diamond’s motion to alter, amend, or vacate the July 1, 2010, judgment. See Ex parte Troutman Sanders, LLP, 866 So.2d 547, 550 (Ala.2003).
REVERSED AND REMANDED WITH INSTRUCTIONS.
THOMPSON, P.J., and PITTMAN, THOMAS, and MOORE, JJ., concur.

. The Airport Authority is now known as the South East Alabama Regional Airport Authority-

. The Prompt Pay Act is sometimes referred to as the Deborah K. Miller Act. See Tolar Constr., LLC v. Kean Elec. Co., 944 So.2d 138, 142 (Ala.2006).

. Section 8-29-3(d) of the Prompt Pay Act provides:
"If the owner, contractor, or subcontractor does not make payment in compliance with this chapter, the owner, contractor, or subcontractor shall be obligated to pay his or her contractor, subcontractor, or sub-subcontractor interest at the rate of one percent per month (12% per annum) on the unpaid balance due.”
(Emphasis added.)

. Section 8-29-6 of the Prompt Pay Act provides:
"A contractor, subcontractor, or sub-subcontractor may file a civil action solely against the party contractually obligated for the payment of the amount claimed to recover the amount due plus the interest accrued in accordance with this chapter. If the court finds in the civil action that the owner, contractor, or subcontractor has not made payment in compliance with this chapter, the court shall award the interest specified in this chapter in addition to the amount due. In any such civil action, the party in whose favor a judgement is rendered shall be entitled to recover payment of reasonable attorneys’ fees, court costs and reasonable expenses from the other party."
(Emphasis added.)

.The Airport Authority also asserted claims against entities that are not parties to this appeal; however, the disposition of those claims is not material to the issues in this appeal.

. Diamond’s complaint had stated a breach-of-contract claim against Southern only.

. Section 8-29-2 of the Prompt Pay Act provides:
"Performance by a contractor, subcontractor, or sub-subcontractor in accordance with the provisions of his or her contract entitles them to payment from the party with whom they contract. All contracts between parties require a date of payment."
(Emphasis added.)